# COMPOSITE
# EXHIBIT A

Filing # 103859802 E-Filed 02/25/2020 12:45:39 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

Case No.:_____
Judge: _____

Mathieu Rosinsky
Plaintiff
                vs.
JGeiger Shading Technology
Defendant

**II.     AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim rounded to the nearest dollar $150,000

**III.    TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
  - ☐ Business governance
  - ☐ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability – commercial
  - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
  - ☐ Commercial foreclosure
  - ☐ Homestead residential foreclosure
  - ☐ Non-homestead residential foreclosure
  - ☐ Other real property actions
- ☐ Professional malpractice
  - ☐ Malpractice – business
  - ☐ Malpractice – medical

- ☐ Malpractice – other professional
- ☐ Other
  - ☐ Antitrust/Trade Regulation
  - ☐ Business Transaction
  - ☐ Circuit Civil - Not Applicable
  - ☐ Constitutional challenge-statute or ordinance
  - ☐ Constitutional challenge-proposed amendment
  - ☐ Corporate Trusts
  - ☐ Discrimination-employment or other
  - ☐ Insurance claims
  - ☐ Intellectual property
  - ☐ Libel/Slander
  - ☐ Shareholder derivative action
  - ☐ Securities litigation
  - ☐ Trade secrets
  - ☐ Trust litigation
- ☐ County Civil
  - ☐ Small Claims up to $8,000
  - ☐ Civil
  - ☐ Replevins
  - ☐ Evictions
  - ☐ Other civil (non-monetary)

NOT A CERTIFIED COPY

FILED: PALM BEACH COUNTY, FL, SHARON R. BOCK, CLERK, 02/25/2020 12:45:39 PM

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

IV.  **REMEDIES SOUGHT** (check all that apply):
   ☒  Monetary;
   ☐  Non-monetary declaratory or injunctive relief;
   ☐  Punitive

V.  **NUMBER OF CAUSES OF ACTION:**
   (Specify)

   2

VI.  **IS THIS CASE A CLASS ACTION LAWSUIT?**
   ☐ Yes
   ☒ No

VII.  **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
   ☒ No
   ☐ Yes – If "yes" list all related cases by name, case number and court:

VIII.  **IS JURY TRIAL DEMANDED IN COMPLAINT?**
   ☐ Yes
   ☒ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ Daniel A Thomas
       Attorney or party
FL Bar No.:  168262
       (Bar number, if attorney)
       Daniel A Thomas
       (Type or print name)
   Date:  02/25/2020

Filing # 103859802 E-Filed 02/25/2020 12:45:39 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO:


MATHIEU ROSINSKY,

     Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

     Defendant.

_____/

## COMPLAINT

Plaintiff, Mathieu Rosinsky, sues Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a

JGeiger Shading Technology, a South Carolina limited liability company, and alleges:

### JURISDICTION, PARTIES AND VENUE

1.     This is an action for damages in excess of $30,000, exclusive of interest, costs and

attorneys' fees.

2.     Plaintiff owns the residence located at 7 Lagomar Road, Palm Beach, Florida (the

"Home").

3.     Defendant is a limited liability company having its principal place of business in South

Carolina and is registered to do business in Florida.  Defendant is a shading system installer and

supplier, and regularly installs and supplies its products and conducts business in Palm Beach County,

Florida.

NOT A CERTIFIED COPY

4.      This Court is the proper venue for this action because the Home is located in Palm Beach County, Florida, and all of Defendant's acts and omissions occurred in this county.

5.      This Court has personal jurisdiction over Defendant under the Florida's long arm statute, section 48.193(1)(a), Florida Statutes, because Defendant did one or more of the acts enumerated in the statute to submit itself to the jurisdiction of the courts of this state, including operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, and breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

## GENERAL ALLEGATIONS

6.      In or about August 2017, Plaintiff and Defendant entered into a written agreement (the "Contract") wherein Defendant agreed to install and supply an interior shading system at the Home (the "Work") in exchange for payment.  An unexecuted copy of the Contract is attached as Exhibit A because, despite a diligent search, Plaintiff was unable to locate an executed copy. Plaintiff believes Defendant has a fully-executed copy in its possession and will file a copy of the fully-executed Contract after seeking it through discovery.

7.      Pursuant to the Contract, Defendant provided an express warranty for the Work (the "Warranty").  A copy of the Warranty is attached as Exhibit B.

8.      The Warranty provides that the Work would "be free of defects in workmanship that are a result of our work for one (1) year. The motor has a five (5) year warranty" and which required Defendant to "either repair the defective part(s) or provide comparable replacement part(s)…."

9.      Defendant completed the Work in or about December 2017.

10.     Shortly after completion of the Work, Plaintiff discovered defects including:

2

a.    The shades supplied and installed by Defendant (the "Shades") get stuck in positions, such that some of the Shades do not go up, others do not go down and others get stuck halfway up or halfway down;

b.    The Shades do not work with the wall control panel;

c.    The Shades do not sync on the timers;

d.    The batteries in the Shades' motors do not charge properly;

e.    Some of the Shades are damaged; and

f.    Defendant failed to complete the Work in a timely manner.

(collectively, the "Defects").

11.    Plaintiff provided Defendant with numerous timely warranty notices and opportunities to cure the Defects.

12.    However, Defendant failed or refused to perform the necessary warranty work and cure the Defects.

13.    All conditions precedent to bringing this action have been satisfied or waived.

## COUNT I - BREACH OF CONTRACT

14.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 above as if set forth in full herein.

15.    This is an action for money damages for breach of contract.

16.    The Contract is a valid, binding agreement.

17.    Defendant substantially and materially breached the Contract by refusing or failing to cure the Defects.

18.    As a direct, natural, proximate, and foreseeable result of Defendant's material breaches of the Contract, Plaintiff suffered and continues to suffer actual, compensatory, general,

3

special, and consequential damages in an amount to be determined at trial, including but not limited to:

   a.  The costs to diagnose the Defects, including expert, professional and consulting expenses;

   b.  The costs to correct, repair and replace Defendant's defective Work;

   c.  Property damage to the Home caused by Defendant's defective Work and necessitated by the replacement/repair thereof; and

   d.  Damage to other property within the Home.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for general damages as alleged herein, along with interest and costs, and for any other relief that the Court deems just and proper under the circumstances.

## COUNT II – BREACH OF WARRANTY

19. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 above as if set forth in full herein.

20. This is an action against for money damages for breach of warranty.

21. The Warranty is a valid, binding, express warranty for the Work by Defendant.

22. Within the Warranty period, Plaintiff provided Defendant with multiple, timely notices and opportunities to cure the Defects.

23. Defendant substantially and materially breached the Warranty by failing to completely repair the Defects and defective Work.

24. As a direct, natural, proximate, and foreseeable result of Defendant's breaches of the Warranty, Plaintiff suffered and continues to suffer general, special and consequential damages in an amount to be determined at trial, including but not limited to:

NOT A CERTIFIED COPY

a. The costs to diagnose the Defects, including expert, professional and consulting expenses;

b. The costs to correct, repair and replace Defendant's defective Work;

c. Property damage to the Home caused by Defendant's defective Work and necessitated by the replacement/repair thereof; and

d. Damage to other property within the Home.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for general damages as alleged herein, along with interest and costs, and for any other relief that the Court deems just and proper under the circumstances.

Dated: February 25, 2020

By:  s/ Daniel A. Thomas
DANIEL A. THOMAS
Florida Bar No. 168262
dthomas@mrachek-law.com
ERICA LESTER SADOWSKI
Florida Bar No. 0795291
esadowski@mrachek-law.com
MRACHEK, FITZGERALD, ROSE,
   KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler, Suite 600
West Palm Beach, Florida 33401-5945
Telephone: 561-655-2250
Facsimile: 561-655-5537
*Attorneys for Plaintiff*

NOT A CERTIFIED COPY

5

# J | GEIGER

### SHADING TECHNOLOGY

## SHADING PROPOSAL
## 7 Lagomar Project

NOT A CERTIFIED COPY

**EXHIBIT**

A

Thank You, Mindi Schwab.

On behalf of the JGeiger family, I want to personally thank you for your interest in one of our shading systems.

Since the very beginning, it has been our honor and privilege to provide the highest quality products and services. Our purpose is to create a more beautiful world through simplicity, creativity, and innovation.

We are continually inspired by your feedback. Thank you for being a part of who we are. We hope you enjoy the most aesthetically advanced shading system in the world.

All the best,

James Geiger

NOT A CERTIFIED COPY







## Quotation for 7 Lagomar Project

Bill To:
Dailey Janssen Architects. P.A.
400 Clemente Street
West Palm Beach, Florida 33401

Date: 08/01/2017
Quote Valid To: 08/08/2017
Prepared By: Alex Gustafson
Proposal ID: QUO-01948-Y5L5X9

### Product Details:

| Qty | Room\Item | Location | Shade Size | Driver |
|-----|-----------|----------|------------|--------|
| 8 | 101 Living | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-3 | Small Regular: R Series Powder Coated | Idler |
| | | 0-4 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-6 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-7 | Medium Regular: R Series Powder Coated | Coupled |
| | | 0-8 | Small Regular: R Series Powder Coated | Idler |
| 1 | 105 Garage | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 8 | 111 Great Room | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Small Regular: R Series | Motorized |
| | | 0-4 | Small Regular: R Series | Idler |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-6 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-7 | Small Regular: R Series | Coupled |
| | | 0-8 | Small Regular: R Series | Idler |

NOT A CERTIFIED COPY

| 7 | 112 Dining | 0-1 | Medium Regular: R Series Powder Coated | Motorized |
|---|---|---|---|---|
| | | 0-2 | Medium Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-4 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-5 | Small Regular: R Series Powder Coated | Idler |
| | | 0-6 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-7 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 113 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 5 | 201 Master Bedroom North Blackout | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Large Regular: R Series Powder Coated | Idler |
| | | 0-4 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 202 Water Closet | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 204 Office | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 206 Guest Bedroom 1 Blackout | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 207 Guest Bath 1 | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 210 Office Bath 2 | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 4 | 211 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-4 | Small Regular: R Series Powder Coated | Idler |

NOT A CERTIFIED COPY

| | | | | |
|---|---|---|---|---|
| 1 | 212 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 213 Breakfast Bar | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 12 | 213 Breakfast Bar?Upper WIndows | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-3 | Small Regular: R Series Powder Coated | Idler |
| 2 | 214 Master Bed South Blackout | 0-1 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Idler |
| 1 | 215 Master Bath South | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 215A Water Closet | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 220 Upper Entry | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 4 | Gym | 0-1 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Medium Regular: R Series Powder Coated | Motorized |
| | | 0-4 | Medium Regular: R Series Powder Coated | Motorized |
| 2 | Gym Entry/Bath | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 5 | Lower Pool House | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Large Regular: R Series | Motorized |
| | | 0-4 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| 13 | Automate 15 Channel Keypad | NA | NA | NA |
| 1 | AutoMate Wifi Bridge | NA | NA | NA |
| 4 | Crestron Key Pad Black | NA | NA | NA |

NOT A CERTIFIED COPY

1   D20C Power Panel        NA        NA                    NA

Summary:

| | |
|---|---|
| Total Materials (USD): | $112,990.00 |
| Tax (USD): | $7,909.30 |
| *Labor Estimate (USD): | $20,475.00 |
| **Total (USD):** | **$141,374.30** |

Hours:273 x $75 = $20,475.00
*Any labor over estimate
will be discounted by 50%

NOT A CERTIFIED COPY

# PROPOSAL TERMS

Proposal Date:08/01/2017
ID: 000001067

GeigTech East Bay LLC ("J|Geiger") proposes to install the specified system described in the Proposal (the "Project") for Dailey Janssen Architects. P.A. according to the terms and conditions set forth herein.

Agreement and Associated Detail - Once executed, the Agreement consists of this Proposal, including all amendments, specifications, drawings, addenda, change orders, written interpretations, and written orders.

Timing - J|Geiger shall endeavor to complete the Project in a timely manner. However, if J|Geiger is delayed at any time in the progress of the work by owner change orders, fire, labor disputes, acts of God or other causes beyond J| Geiger control, the completion schedule for the work or affected parts of the work shall be extended by the same amount of the time caused by the delay and installation cost adjusted as necessary.

J|Geiger brackets and hardware should be installed after windows/or ceiling finishes (within installation area) are complete. Final installation of the shade fabric should be scheduled after major construction has been completed and the jobsite has been thoroughly cleaned.  If the shade install is scheduled too early and the shades are damaged, moved, blemished, or otherwise negatively affected during construction, additional labor, rework, or repairs may be required not covered under warranty which will be added to the total cost of the job.

Payments to J|Geiger -- Payments shall be made under the terms and manner described in Cost and Payment Terms addendum.

Insurance - J|Geiger shall maintain such insurance necessary to protect from claims under workers compensation and from certain damage to the owners property.

Change Orders - The owner may order changes, additions, or modifications without invalidating the Agreement. Such changes must be in writing and signed by both parties. If agreed, J|Geiger shall provide the owner in writing the amount of additional costs or cost reductions resulting from changes ordered within 15 working days unless this requirement is waived in writing by the owner. Change Orders shall be paid in full upon acceptance of change and shall not alter the contract's payment schedule.

Notice - If any hardware (brackets/shades/motors) are moved, altered, or removed by a non-J|Geiger employee (i.e. contractor/carpenter/painter/owner, etc.) then an additional rework and/or repair cost may occur.

Warranty - JGeiger Shading Technology ("JGeiger") represents and warrants to you our customer(s) ("Customer"), the following with respect to your new shading systems ("Shading"): Our Work: We warrant that the work we have done for you or Customer on the Shading will be *free of defects in workmanship* that are a result of our work for one (1) year. The motor has a five (5) year warranty

Display Rights - J|Geiger shall be permitted to photograph or otherwise obtain and publish images of the Project for quality control or marketing purposes.

Limitation of Liability - In no event shall J|Geiger be held liable for any consequential, indirect, incidental, special, exemplary or punitive damages, lost profits or revenues or diminution in value, arising out of or relating to any breach of these terms, whether or not the possibility of such damages has been disclosed in advance by buyer or could have been reasonably foreseen by owner/agent, regardless of the legal or equitable theory (contract, tort or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose. In no event shall J|Geiger's aggregate liability arising out of or related to this agreement, whether arising out of or related to breach of contract, tort (including negligence) or otherwise, exceed the total of the amounts paid to J|Geiger for the goods and services sold hereunder.

Expiration - The Proposal shall expire 30 days from the date referenced in this agreement. No work will be scheduled without a deposit and a fully executed copy of this agreement. All drawings and specifications are contingent on agreement and retainer.

Owner/Agent:_____     Date:_____

J|Geiger Design Consultant:_____     Date:_____

# COST & PAYMENT TERMS

Payment should be made as follows:

Total Amount to be Paid (USD): $141,374.30

| Payment Schedule | Amount | Due Date |
|---|---|---|
| Hardware Deposit | $52,927.55 | Upon Acceptance |
| Shade Deposit | $67,971.75 | Prior to Fabric Order |
| Installation/Change Orders | (Estimate)$20,475.00 | Upon Completion |

- Progress payments will be made according to the payment schedule above. Equipment or fabric will not be ordered until the fabric deposit has been submitted. These times are subject to the timing of the construction and the lead times required for the ordered fabric/equipment.

- Checks can be mailed to JGeiger Shading Technology, 150 E 58th Street 3rd Floor, New York, NY 10155. Please include proposal number QUO-01948-Y5L5X9 in the memo section.

- J|Geiger shade brackets can be anodized to match mullions and exposed I-beams. Anodized estimate will be quoted after proposal approval.

- Additional Costs Not Included. The costs associated with any related work or materials, including, but not limited to electrical, drywall, painting, cabinets are not included unless specifically documented in the Proposal. J|Geiger is not responsible for interior conduit or shade wiring. Shade wiring should be supplied by the integration contractor or a licensed electrician.

- The Shading system is designed to be integrated to a 3rd party smart home integration ie; Crestron, Control4, etc...

- The Premises shall be delivered as follows: Level ceiling, free of debris, no furniture blocking work areas, and control wires in place.

# CLEANING INFORMATION

- Regular light dusting maintains a like-new appearance of most shades.
- For deeper cleaning, vacuum gently with a brush attachment of any vacuum cleaner, using strokes in the same direction.
- Compressed air or hair dryer (non-heat setting) can be used to blow dust off.
- Spot-clean shades and blinds with soft cloth or sponge moistened with lukewarm water. Add mild detergent if needed. Blot gently to avoid creasing or damaging the fabric. Rubbing can damage fabrics. Spot-cleaning may result in cleaner areas.
- Steaming can be done to remove wrinkles from some fabrics. A hand-held travel size steamer that provides continuous steam is best. Heavy-duty steamers are not recommended.

NOT A CERTIFIED COPY

# J | GEIGER

### SHADING TECHNOLOGY

## THANK YOU

If you have any questions or concerns,
please contact us at 1-844-JGEIGER,
or email us at info@jgeiger.com.

NOT A CERTIFIED COPY

## Limited Warranty

**JGeiger Shading Technology** ("JGeiger") represents and warrants to you our customer(s) ("Customer"), the following with respect to your new shading systems ("Shading"):

**Our Work**: We warrant that the work we have done for you or Customer on the Shading will be ***free of defects in workmanship*** that are a result of our work for one (1) year.  The motor has a five (5) year warranty.

NOT A CERTIFIED COPY

**EXHIBIT**

**B**

exhibitsticker.com

QUO-01948-Y5L5X9

**Installation/Labor/Independent Contractors:** For issues that arise with installation: The labor provided by us or by independent contractors under our control and direction is warranted to be free from defects in workmanship for the warranty period of one (1) year.

**Products /Parts/Motor:** The products and parts supplied by us are warranted to be for the purpose for which it was intended to be used for one year with the exception of the motor. The motor was not manufactured by JGeiger, but carries a five (5) year warranty. The Shading products and materials manufactured by us are covered under this warranty for one year as to both materials installation, and labor only if installed, altered, or modified by us. Defects are only covered by this warranty a defect arises from the installation, alteration, or modification we have performed.

**Repair/Replacement/How does it work:** JGeiger will, at its option, either repair the defective part(s) or provide comparable replacement part(s) so long as Customer promptly notifies JGeiger of the defect within the warranty period and returns the defective part(s).

**Warranty Extended to Repairs and Replacements:**
Any repair or replacement performed under this warranty will itself be warranted for the remaining term of this warranty.

**Exclusions:** This warranty does not extend to defects caused directly or indirectly by:
- Acts of God, including storms, wind, floods, and fire;
- Vandalism or other criminal acts;
- Failure to diligently follow recommended maintenance or upkeep procedures or practices and use of incompatible devices or accessories;
- Any normal wear and tear; fading or normal aging or use discoloration;
- Pre-existing conditions or failure of any supporting structure not constructed by us;
- Any work, changes or, modifications performed by Customer or by persons hired by Customer or by others not our employees, agent or contractors or not otherwise under our direction or control
- Use of incorrect line voltages fuses or circuit breakers; a 12 gauge wire must be run less than 200 feet

**Limitation on damages:**
JGeiger will not be liable for any consequential, incidental, exemplary or special damages (including, damages related to any personal injury, failure to meet any duty, including of good faith or reasonable care, negligence, or any other loss whatsoever), nor for any repair work undertaken without JGeiger's prior written consent, deinstallation, or inability to use the Shading.

**Customer Duties/ How to notify us:**
Report any defect as soon as you the Customer notice it, and cooperate in the process of remedying the problem.
Contact us as soon as the after the issue or defect first becomes evident;
Cooperate fully in providing access to the premises during our normal business hours. See our contact information below.

**Contact Information:**
Contact JGeiger with the number provided below with questions concerning the installation or operation of the System or this Warranty, or to make a warranty claim. Please provide the exact model number when calling. USA (Monday – Thursday, 8:00am–7:00pm) (Friday, 8:00am–5:00pm)

**(844)-543-4437**
http://www.jgeigershading.com

NOT A CERTIFIED COPY

QUO-01948-Y5L5X9

Filing # 103859802 E-Filed 02/25/2020 12:45:39 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO:

MATHIEU ROSINSKY,

    Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

    Defendant.

_____/

<u>**SUMMONS**</u>

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this Summons, a copy
of the Complaint, on Defendant, **GEIGTECH EAST BAY, LLC d/b/a J GEIGER a/k/a
JGEIGER SHADING TECHNOLOGY**, by serving:

Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology
c/o Registered Agent: Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

Each Defendant is required to serve written defenses to the complaint or petition on DANIEL A.
THOMAS, ESQ., Plaintiff's attorney, whose address is 505 SOUTH FLAGLER DRIVE, SUITE
600, WEST PALM BEACH, FL. 333401 within 20 days after service of this summons on that
Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk
of this court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant
fails to do so, a default will be entered against that Defendant for the relief demanded in the
complaint or petition.

Dated:    **Feb 28 2020**

    **SHARON R. BOCK**
CLERK OF THE CIRCUIT COURT

By: _____

   **Dolly Garcia As Deputy Clerk**





**SHARON R. BOCK**

CLERK & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

**RECEIPT**
3558220

Printed On:
02/28/2020 08:25
Page 1 of 1

| Receipt Number: 3558220 - Date 02/28/2020  Time 8:25AM | | | |
|---|---|---|---|
| **Received of:** | Mrachek Fitzgerald Rose Konopka Thomas<br>505 S Flagler Dr<br>Suite 600<br>West Palm Beach, FL 33401 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 411.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 411.00 |
| **Receipt ID:** | 9860780 | **Remaining Balance:** | 0.00 |
| **Division:** | AJ: Circuit Civil Central - AJ(Civil) | | |

| Case# 50-2020-CA-002208-XXXX-MB -- PLAINTIFF/PETITIONER: ROSINSKY, MATHIEU | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 411.00 | 411.00 | 0.00 |
| **Case Total** | **411.00** | **411.00** | **0.00** |

| Payments | | |
|---|---|---|
| Type | Ref# | Amount |
| EFiling_ACH | 27329607 | 411.00 |
| **Total Received** | | 411.00 |
| **Total Paid** | | 411.00 |



**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.
**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

Filing # 105330650 E-Filed 03/24/2020 09:50:07 AM

## RETURN OF SERVICE

State of Florida                 County of Palm Beach                 15th Judicial Circuit Court

Case Number: 502020CA002208XXXXMB

Plaintiff:
MATHIEU ROSINSKY,

vs.

Defendant:
GEIGTECH EAST BAY, LLC d/b/a J GEIGER a/k/a JGEIGER SHADING TECHNOLOGY, a
South Carolina limited liability company,

For:
Daniel A. Thomas, Esq.
Mrachek, Fitgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 South Flagler Drive
Suite 600
West Palm Beach, FL 33401

Received by Rock Legal Services on the 28th day of February, 2020 at 1:51 pm to be served on Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology by serving: Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology c/o Registered Agent: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

I, Christopher Compton, do hereby affirm that on the 2nd day of March, 2020 at 1:00 pm, I:

**SERVED** the within named **LIMITED LIABILITY COMPANY** by delivering a true copy of the Summons and Complaint with the date and hour of service endorsed thereon by me to: KANEISHA GROSS as employee of the **Registered Agent** for Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology at 1201 Hays Street, Tallahassee, FL 32301 and informed said person of the contents therein, in compliance with 48.062.

Description of Person Served: Age: 30, Sex: F, Race/Skin Color: BLACK, Height: 5'8, Weight: 175, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the Second Judicial Circuit in which the process was served. Under penalty of perjury I declare I have read the foregoing documents and that the facts stated in it are true. Notary not required pursuant to FL Statute 92.525 Sec (2)

Christopher Compton
Certified Process Server # 101

Rock Legal Services
2048 Ponce De Leon Ave
West Palm Beach, FL 33407
(561) 296-7574

Our Job Serial Number: ROC-2020003353

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.0n



*** FILED: PALM BEACH COUNTY, FL  SHARON R BOCK, CLERK. 03/24/2020 09:50:07 AM ***

Filing # 105669690 E-Filed 03/31/2020 12:53:20 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO: 502020CA002208XXXXMB AJ

MATHIEU ROSINSKY,

      Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

      Defendant.

_____/

## PLAINTIFF'S MOTION FOR CLERK'S DEFAULT AND PROPOSED DEFAULT

Plaintiff, Mathieu Rosinsky, pursuant to Fla. R. Civ. P. 1.500(a), files this its Motion for

Clerk's Default against Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading

Technology, and states:

    1.    On March 2, 2020, Defendant was served with a copy of the Summons and Complaint

in this action. A true and correct copy of the Return of Service is attached hereto as Exhibit A.

    2.    Accordingly, Defendant's response to the Complaint was due on or before March 23,

2020.

    3.    Defendant has failed to file or serve any paper in this action to date, and has failed to

request or otherwise seek an extension of time to serve or file any paper. Also, no appearance has

been filed by any counsel on behalf of Defendant.[1]

_____

[1] A corporation may not represent itself through non-lawyer employees, officers, or shareholders. *Nicholson Supply Co. v. First Federal Savings & Loan Ass'n of Hardee County*, 184 So.2d 438 (Fla. 2d DCA 1966); *see also Szteinbaum v. Kaes Inversiones y Valores*, 476 So.2d 247 (Fla. 3d DCA 1985) ("It is well recognized that a corporation, unlike a natural person, cannot represent itself and cannot appear in a court of law without an attorney.") and *Hub Financial Corp. v. Olmetti*, 465 So.2d 618 (Fla. 4th DCA 1985) (a corporation cannot represent itself).

*** FILED: PALM BEACH COUNTY, FL   SHARON R BOCK, CLERK. 03/31/2020 12:53:20 PM ***

WHEREFORE, Plaintiff, Mathieu Rosinsky, requests that the Clerk enter a default against Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, and award any other relief deemed just and proper under the circumstances.

Dated: March 31, 2020

Respectfully Submitted,

By:     s/DANIEL A. THOMAS
DANIEL A. THOMAS
Florida Bar No. 168262
dthomas@mrachek-law.com
ERICA LESTER SADOWSKI
Florida Bar No. 0795291
esadowski@mrachek-law.com
MRACHEK, FITZGERALD, ROSE,
    KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler, Suite 600
West Palm Beach, Florida 33401-5945
Telephone: 561-655-2250
Facsimile: 561-655-5537
*Attorneys for Plaintiff*

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO:  502020CA002208XXXXMB AJ


MATHIEU ROSINSKY,

    Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

    Defendant.

_____/

## CLERK'S DEFAULT

A Clerk's Default is hereby entered in this action against Defendant, GeigTech East Bay, LLC

d/b/a J Geiger a/k/a JGeiger Shading Technology, because it has failed to serve or file any paper as

required by Florida law.

    Dated this _____ day of _____, 2020.


                           By: _____
                                    Deputy Clerk

Copies to:

Daniel S. Thomas, Esq. and Erica Lester Sadowski, Esq., Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., 505 South Flagler, Suite 600, West Palm Beach, Florida 33401 (dthomas@mrachek-law.com; esadowski@mrachek-law.com; hbranstrom@mrachek-law.com)

GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, c/o: Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301

NOT A CERTIFIED COPY

Filing # 105330650 E-Filed 03/24/2020 09:50:07 AM

## RETURN OF SERVICE

State of Florida                County of Palm Beach                15th Judicial Circuit Court

Case Number: 502020CA002208XXXXMB

Plaintiff:
MATHIEU ROSINSKY,

vs.

Defendant:
GEIGTECH EAST BAY, LLC d/b/a J GEIGER a/k/a JGEIGER SHADING TECHNOLOGY, a
South Carolina limited liability company,

For:
Daniel A. Thomas, Esq.
Mrachek, Fitgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 South Flagler Drive
Suite 600
West Palm Beach, FL 33401

Received by Rock Legal Services on the 28th day of February, 2020 at 1:51 pm to be served on Geigtech East Bay, LLC d/b/a J
Geiger a/k/a JGeiger Shading Technology by serving: Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading
Technology c/o Registered Agent: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

I, Christopher Compton, do hereby affirm that on the 2nd day of March, 2020 at 1:00 pm, I:

**SERVED** the within named **LIMITED LIABILITY COMPANY** by delivering a true copy of the Summons
and Complaint with the date and hour of service endorsed thereon by me to: **KANEISHA GROSS** as
employee of the **Registered Agent for Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading
Technology at 1201 Hays Street, Tallahassee, FL 32301** and informed said person of the contents therein, in
compliance with 48.062.

Description of Person Served: Age: 30, Sex: F, Race/Skin Color: BLACK, Height: 5'8, Weight: 175, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the
Second Judicial Circuit in which the process was served. Under penalty of perjury I declare I have read the foregoing documents and
that the facts stated in it are true. Notary not required pursuant to FL Statute 92.525 Sec (2)

Christopher Compton
Certified Process Server # 101

Rock Legal Services
2048 Ponce De Leon Ave
West Palm Beach, FL 33407
(561) 296-7574

Our Job Serial Number: ROC-202000335

EXHIBIT
A

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.0n



IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

Case Number: 50-2020-CA-002208-XXXX-MB
Division:       AJ: Circuit Civil Central - AJ (Civil)

MATHIEU ROSINSKY,
      Plaintiff(s),
   vs.

GEIGTECH EAST BAY LLC DBA J GEIGER AKA JGEIGER
SHADING TECHNOLOGY A SOUTH CAROLINA LLC
      Defendant(s).

## DEFAULT

A default is entered in the above styled cause against:

**GEIGTECH EAST BAY LLC DBA J GEIGER AKA
JGEIGER SHADING TECHNOLOGY**

for failure to serve or file any pleading or document as required by law.

Dated on: 2nd of April, 2020.

**Sharon R. Bock**
**Clerk & Comptroller**

By: _____

Sherrod, Kattie M as Deputy Clerk

☐ Copies Not furnished – envelopes not provided.

☒ Copies furnished to: DANIEL A THOMAS, ESQ  DTHOMAS@MRACHEK-LAW.COM

FILED: PALM BEACH COUNTY, FL SHARON R BOCK, CLERK. 04/02/2020 04:31:37 PM

Filing # 105817600 E-Filed 04/03/2020 08:17:44 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO: 502020CA002208XXXXMB AJ

MATHIEU ROSINSKY,

    Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

    Defendant.

_____/

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
## OF LIABILITY AGAINST DEFENDANT

Plaintiff, Mathieu Rosinsky, pursuant to Rules 1.270(b) and 1.500(e) of the Florida Rules

of Civil Procedure, respectfully requests entry of a Default Judgment of Liability in his favor and

against Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, for

the claims alleged in the Complaint. In support, Plaintiff states:

1.      Defendant was served with the Complaint on March 2, 2020. True and correct

copies of the Complaint and Return of Service of the Summons are attached as Composite Exhibit

1.

2.      Because Defendant was served with process but has failed to defend or otherwise

file or serve any paper in this action, a Clerk's Default was entered against Defendant on April 2,

2020. A true and correct copy of the Clerk's Default is attached as Exhibit 2.

3.      The effect of a default is that Defendant admits liability as claimed in the complaint.

*Donohue v. Brightman*, 939 So. 2d 1162, 1165 (Fla. 4th DCA 2006) ("The entry of default

NOT A CERTIFIED COPY

precludes a party from contesting the existence of the plaintiff's claim and liability thereon") (citation omitted).

4. Therefore, now a default judgment of liability can be entered against Defendant, with a properly noticed hearing or trial on damages to be held thereafter. *See Williams v. Direct Dispensing, Inc.,* 630 So. 2d 1195, 1196 (Fla. 3d DCA 1994) (affirming default judgment entered on issue of liability, and setting aside final judgment and remanding for determination of damages); *see also Hernandez v. Leiva,* 391 So. 2d 292, 294 (Fla. 3d DCA 1980) (citing Fla. R. Civ. P. 1.270(b)) (decision to bifurcate issues of liability and damages is within broad discretion of trial court).

5. Thus, Plaintiff now seeks a default judgment of liability against Defendant and requests that this Court set a final hearing or trial on damages to be held within the next 90 days, subject to the Court's availability.

WHEREFORE, Plaintiff, Mathieu Rosinsky, respectfully requests:

a. Entry of a Default Judgment of Liability in his favor and against Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, on the claims alleged in the Complaint;

b. The setting of a final hearing or trial on damages to be held within the next 90 days, subject to the Court's availability; and

c. Any other and further relief that this Court deems just and proper under the circumstances.

Respectfully Submitted,

By:  s/DANIEL A. THOMAS
DANIEL A. THOMAS
Florida Bar No. 168262
dthomas@mrachek-law.com
ERICA LESTER SADOWSKI
Florida Bar No. 0795291
esadowski@mrachek-law.com
MRACHEK, FITZGERALD, ROSE,
  KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler, Suite 600
West Palm Beach, Florida 33401-5945
Telephone:  561-655-2250
Facsimile:  561-655-5537
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2020, I served the foregoing document by U.S. Mail on Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, c/o its Registered Agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

By:  s/Daniel A. Thomas
DANIEL A. THOMAS

Filing # 103859802 E-Filed 02/25/2020 12:45:39 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO:


MATHIEU ROSINSKY,

    Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

    Defendant.

_____/

## COMPLAINT

    Plaintiff, Mathieu Rosinsky, sues Defendant, GeigTech East Bay, LLC d/b/a J Geiger a/k/a

JGeiger Shading Technology, a South Carolina limited liability company, and alleges:

### JURISDICTION, PARTIES AND VENUE

    1.    This is an action for damages in excess of $30,000, exclusive of interest, costs and

attorneys' fees.

    2.    Plaintiff owns the residence located at 7 Lagomar Road, Palm Beach, Florida (the

"Home").

    3.    Defendant is a limited liability company having its principal place of business in South

Carolina and is registered to do business in Florida. Defendant is a shading system installer and

supplier, and regularly installs and supplies its products and conducts business in Palm Beach County,

Florida.



PLAINTIFF'S
EXHIBIT
1
COMPOSITE

4.      This Court is the proper venue for this action because the Home is located in Palm Beach County, Florida, and all of Defendant's acts and omissions occurred in this county.

5.      This Court has personal jurisdiction over Defendant under the Florida's long arm statute, section 48.193(1)(a), Florida Statutes, because Defendant did one or more of the acts enumerated in the statute to submit itself to the jurisdiction of the courts of this state, including operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, and breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

## GENERAL ALLEGATIONS

6.      In or about August 2017, Plaintiff and Defendant entered into a written agreement (the "Contract") wherein Defendant agreed to install and supply an interior shading system at the Home (the "Work") in exchange for payment.  An unexecuted copy of the Contract is attached as Exhibit A because, despite a diligent search, Plaintiff was unable to locate an executed copy. Plaintiff believes Defendant has a fully-executed copy in its possession and will file a copy of the fully-executed Contract after seeking it through discovery.

7.      Pursuant to the Contract, Defendant provided an express warranty for the Work (the "Warranty").  A copy of the Warranty is attached as Exhibit B.

8.      The Warranty provides that the Work would "be free of defects in workmanship that are a result of our work for one (1) year. The motor has a five (5) year warranty" and which required Defendant to "either repair the defective part(s) or provide comparable replacement part(s)...."

9.      Defendant completed the Work in or about December 2017.

10.     Shortly after completion of the Work, Plaintiff discovered defects including:

2

a.       The shades supplied and installed by Defendant (the "Shades") get stuck in positions, such that some of the Shades do not go up, others do not go down and others get stuck halfway up or halfway down;

b.       The Shades do not work with the wall control panel;

c.       The Shades do not sync on the timers;

d.       The batteries in the Shades' motors do not charge properly;

e.       Some of the Shades are damaged; and

f.       Defendant failed to complete the Work in a timely manner.

(collectively, the "Defects").

11.       Plaintiff provided Defendant with numerous timely warranty notices and opportunities to cure the Defects.

12.       However, Defendant failed or refused to perform the necessary warranty work and cure the Defects.

13.       All conditions precedent to bringing this action have been satisfied or waived.

## COUNT I - BREACH OF CONTRACT

14.       Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 above as if set forth in full herein.

15.       This is an action for money damages for breach of contract.

16.       The Contract is a valid, binding agreement.

17.       Defendant substantially and materially breached the Contract by refusing or failing to cure the Defects.

18.       As a direct, natural, proximate, and foreseeable result of Defendant's material breaches of the Contract, Plaintiff suffered and continues to suffer actual, compensatory, general,

3

special, and consequential damages in an amount to be determined at trial, including but not limited to:

      a.     The costs to diagnose the Defects, including expert, professional and consulting expenses;

      b.     The costs to correct, repair and replace Defendant's defective Work;

      c.     Property damage to the Home caused by Defendant's defective Work and necessitated by the replacement/repair thereof; and

      d.     Damage to other property within the Home.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for general damages as alleged herein, along with interest and costs, and for any other relief that the Court deems just and proper under the circumstances.

## COUNT II – BREACH OF WARRANTY

19. Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 above as if set forth in full herein.

20. This is an action against for money damages for breach of warranty.

21. The Warranty is a valid, binding, express warranty for the Work by Defendant.

22. Within the Warranty period, Plaintiff provided Defendant with multiple, timely notices and opportunities to cure the Defects.

23. Defendant substantially and materially breached the Warranty by failing to completely repair the Defects and defective Work.

24. As a direct, natural, proximate, and foreseeable result of Defendant's breaches of the Warranty, Plaintiff suffered and continues to suffer general, special and consequential damages in an amount to be determined at trial, including but not limited to:

4

a.      The costs to diagnose the Defects, including expert, professional and consulting expenses;

b.      The costs to correct, repair and replace Defendant's defective Work;

c.      Property damage to the Home caused by Defendant's defective Work and necessitated by the replacement/repair thereof; and

d.      Damage to other property within the Home.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant for general damages as alleged herein, along with interest and costs, and for any other relief that the Court deems just and proper under the circumstances.

Dated: February 25, 2020

By:     s/ Daniel A. Thomas
        DANIEL A. THOMAS
        Florida Bar No. 168262
        dthomas@mrachek-law.com
        ERICA LESTER SADOWSKI
        Florida Bar No. 0795291
        esadowski@mrachek-law.com
        MRACHEK, FITZGERALD, ROSE,
           KONOPKA, THOMAS & WEISS, P.A.
        505 South Flagler, Suite 600
        West Palm Beach, Florida 33401-5945
        Telephone:  561-655-2250
        Facsimile:  561-655-5537
        *Attorneys for Plaintiff*

NOT A CERTIFIED COPY

5

# SHADING PROPOSAL
## 7 Lagomar Project

NOT A CERTIFIED COPY

EXHIBIT

A

Thank You, Mindi Schwab.

On behalf of the JGeiger family, I want to personally thank you for your interest in one of our shading systems.

Since the very beginning, it has been our honor and privilege to provide the highest quality products and services. Our purpose is to create a more beautiful world through simplicity, creativity, and innovation.

We are continually inspired by your feedback. Thank you for being a part of who we are. We hope you enjoy the most aesthetically advanced shading system in the world.

All the best,

James Geiger







## Quotation for 7 Lagomar Project

Bill To:
Dailey Janssen Architects. P.A.
400 Clemente Street
West Palm Beach, Florida 33401

Date: 08/01/2017
Quote Valid To: 08/08/2017
Prepared By: Alex Gustafson
Proposal ID: QUO-01948-Y5L5X9

Product Details:

| Qty | Room\Item | Location | Shade Size | Driver |
|-----|-----------|----------|------------|--------|
| 8 | 101 Living | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-3 | Small Regular: R Series Powder Coated | Idler |
| | | 0-4 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-6 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-7 | Medium Regular: R Series Powder Coated | Coupled |
| | | 0-8 | Small Regular: R Series Powder Coated | Idler |
| 1 | 105 Garage | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 8 | 111 Great Room | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Small Regular: R Series | Motorized |
| | | 0-4 | Small Regular: R Series | Idler |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-6 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-7 | Small Regular: R Series | Coupled |
| | | 0-8 | Small Regular: R Series | Idler |

NOT A CERTIFIED COPY

| 7 | 112 Dining | 0-1 | Medium Regular: R Series Powder Coated | Motorized |
|---|---|---|---|---|
| | | 0-2 | Medium Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-4 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-5 | Small Regular: R Series Powder Coated | Idler |
| | | 0-6 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-7 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 113 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 5 | 201 Master Bedroom North Blackout | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Large Regular: R Series Powder Coated | Idler |
| | | 0-4 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 202 Water Closet | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 204 Office | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 206 Guest Bedroom 1 Blackout | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 2 | 207 Guest Bath 1 | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 210 Office Bath 2 | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 4 | 211 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-4 | Small Regular: R Series Powder Coated | Idler |

NOT A CERTIFIED COPY

| | | | | |
|---|---|---|---|---|
| 1 | 212 Gallery | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 213 Breakfast Bar | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 12 | 213 Breakfast Bar?Upper WIndows | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Coupled |
| | | 0-3 | Small Regular: R Series Powder Coated | Idler |
| 2 | 214 Master Bed South Blackout | 0-1 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Idler |
| 1 | 215 Master Bath South | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 1 | 215A Water Closet | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| 3 | 220 Upper Entry | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Small Regular: R Series Powder Coated | Motorized |
| 4 | Gym | 0-1 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-3 | Medium Regular: R Series Powder Coated | Motorized |
| | | 0-4 | Medium Regular: R Series Powder Coated | Motorized |
| 2 | Gym Entry/Bath | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Motorized |
| 5 | Lower Pool House | 0-1 | Small Regular: R Series Powder Coated | Motorized |
| | | 0-2 | Small Regular: R Series Powder Coated | Idler |
| | | 0-3 | Large Regular: R Series | Motorized |
| | | 0-4 | Large Regular: R Series Powder Coated | Motorized |
| | | 0-5 | Small Regular: R Series Powder Coated | Motorized |
| 13 | Automate 15 Channel Keypad | NA | NA | NA |
| 1 | AutoMate Wifi Bridge | NA | NA | NA |
| 4 | Crestron Key Pad Black | NA | NA | NA |

NOT A CERTIFIED COPY

| 1 | D20C Power Panel | NA | NA | NA |
|---|---|---|---|---|

Summary:

| | | |
|---|---|---|
| Total Materials (USD): | $112,990.00 | |
| Tax (USD): | $7,909.30 | |
| *Labor Estimate (USD): | $20,475.00 | Hours:273 x $75 = $20,475.00 |
| **Total (USD):** | **$141,374.30** | *Any labor over estimate |
| | | will be discounted by 50% |

NOT A CERTIFIED COPY

# PROPOSAL TERMS

Proposal Date:08/01/2017
ID: 000001067

GeigTech East Bay LLC ("J|Geiger") proposes to install the specified system described in the Proposal (the "Project") for Dailey Janssen Architects. P.A. according to the terms and conditions set forth herein.

Agreement and Associated Detail - Once executed, the Agreement consists of this Proposal, including all amendments, specifications, drawings, addenda, change orders, written interpretations, and written orders.

Timing - J|Geiger shall endeavor to complete the Project in a timely manner. However, if J|Geiger is delayed at any time in the progress of the work by owner change orders, fire, labor disputes, acts of God or other causes beyond J|Geiger control, the completion schedule for the work or affected parts of the work shall be extended by the same amount of the time caused by the delay and installation cost adjusted as necessary.

J|Geiger brackets and hardware should be installed after windows/or ceiling finishes (within installation area) are complete.  Final installation of the shade fabric should be scheduled after major construction has been completed and the jobsite has been thoroughly cleaned.  If the shade install is scheduled too early and the shades are damaged, moved, blemished, or otherwise negatively affected during construction, additional labor, rework, or repairs may be required not covered under warranty which will be added to the total cost of the job.

Payments to J|Geiger -- Payments shall be made under the terms and manner described in Cost and Payment Terms addendum.

Insurance - J|Geiger shall maintain such insurance necessary to protect from claims under workers compensation and from certain damage to the owners property.

Change Orders - The owner may order changes, additions, or modifications without invalidating the Agreement. Such changes must be in writing and signed by both parties. If agreed, J|Geiger shall provide the owner in writing the amount of additional costs or cost reductions resulting from changes ordered within 15 working days unless this requirement is waived in writing by the owner. Change Orders shall be paid in full upon acceptance of change and shall not alter the contract's payment schedule.

Notice - If any hardware (brackets/shades/motors) are moved, altered, or removed by a non-J|Geiger employee (i.e. contractor/carpenter/painter/owner, etc.) then an additional rework and/or repair cost may occur.

Warranty - JGeiger Shading Technology ("JGeiger") represents and warrants to you our customer(s) ("Customer"), the following with respect to your new shading systems ("Shading"): Our Work: We warrant that the work we have done for you or Customer on the Shading will be *free of defects in workmanship* that are a result of our work for one (1) year. The motor has a five (5) year warranty

Display Rights - J|Geiger shall be permitted to photograph or otherwise obtain and publish images of the Project for quality control or marketing purposes.

Limitation of Liability - In no event shall J|Geiger be held liable for any consequential, indirect, incidental, special, exemplary or punitive damages, lost profits or revenues or diminution in value, arising out of or relating to any breach of these terms, whether or not the possibility of such damages has been disclosed in advance by buyer or could have been reasonably foreseen by owner/agent, regardless of the legal or equitable theory (contract, tort or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose. In no event shall J|Geiger's aggregate liability arising out of or related to this agreement, whether arising out of or related to breach of contract, tort (including negligence) or otherwise, exceed the total of the amounts paid to J|Geiger for the goods and services sold hereunder.

Expiration - The Proposal shall expire 30 days from the date referenced in this agreement. No work will be scheduled without a deposit and a fully executed copy of this agreement. All drawings and specifications are contingent on agreement and retainer.

Owner/Agent:_____     Date:_____

J|Geiger Design Consultant:_____     Date:_____

# COST & PAYMENT TERMS

Payment should be made as follows:

Total Amount to be Paid (USD): $141,374.30

| Payment Schedule | Amount | Due Date |
|---|---|---|
| Hardware Deposit | $52,927.55 | Upon Acceptance |
| Shade Deposit | $67,971.75 | Prior to Fabric Order |
| Installation/Change Orders | (Estimate)$20,475.00 | Upon Completion |

- Progress payments will be made according to the payment schedule above. Equipment or fabric will not be ordered until the fabric deposit has been submitted. These times are subject to the timing of the construction and the lead times required for the ordered fabric/ equipment.

- Checks can be mailed to JGeiger Shading Technology, 150 E 58th Street 3rd Floor, New York, NY 10155. Please include proposal number QUO-01948-Y5L5X9 in the memo section.

- J|Geiger shade brackets can be anodized to match mullions and exposed I-beams. Anodized estimate will be quoted after proposal approval.

- Additional Costs Not Included. The costs associated with any related work or materials, including, but not limited to electrical, drywall, painting, cabinets are not included unless specifically documented in the Proposal. J|Geiger is not responsible for interior conduit or shade wiring. Shade wiring should be supplied by the integration contractor or a licensed electrician.

- The Shading system is designed to be integrated to a 3rd party smart home integration ie; Crestron, Control4, etc...

- The Premises shall be delivered as follows: Level ceiling, free of debris, no furniture blocking work areas, and control wires in place.

# CLEANING INFORMATION

- Regular light dusting maintains a like-new appearance of most shades.
- For deeper cleaning, vacuum gently with a brush attachment of any vacuum cleaner, using strokes in the same direction.
- Compressed air or hair dryer (non-heat setting) can be used to blow dust off.
- Spot-clean shades and blinds with soft cloth or sponge moistened with lukewarm water. Add mild detergent if needed. Blot gently to avoid creasing or damaging the fabric. Rubbing can damage fabrics. Spot-cleaning may result in cleaner areas.
- Steaming can be done to remove wrinkles from some fabrics. A hand-held travel size steamer that provides continuous steam is best. Heavy-duty steamers are not recommended.

NOT A CERTIFIED COPY

JGEIGER

## THANK YOU

If you have any questions or concerns,
please contact us at 1-844-JGEIGER,
or email us at info@jgeiger.com.

NOT A CERTIFIED COPY

## Limited Warranty

**JGeiger Shading Technology** ("JGeiger") represents and warrants to you our customer(s) ("Customer"), the following with respect to your new shading systems ("Shading"):

**Our Work**: We warrant that the work we have done for you or Customer on the Shading will be *free of defects in workmanship* that are a result of our work for one (1) year.  The motor has a five (5) year warranty.

**EXHIBIT**

**B**

QUO-01948-Y5L5X9

**Installation/Labor/Independent Contractors:** For issues that arise with installation: The labor provided by us or by independent contractors under our control and direction is warranted to be free from defects in workmanship for the warranty period of one (1) year.

**Products /Parts/Motor:** The products and parts supplied by us are warranted to be for the purpose for which it was intended to be used for one year with the exception of the motor. The motor was not manufactured by JGeiger, but carries a five (5) year warranty. The Shading products and materials manufactured by us are covered under this warranty for one year as to both materials installation, and labor only if installed, altered, or modified by us. Defects are only covered by this warranty a defect arises from the installation, alteration, or modification we have performed.

**Repair/Replacement/How does it work:** JGeiger will, at its option, either repair the defective part(s) or provide comparable replacement part(s) so long as Customer promptly notifies JGeiger of the defect within the warranty period and returns the defective part(s).

**Warranty Extended to Repairs and Replacements:**
Any repair or replacement performed under this warranty will itself be warranted for the remaining term of this warranty.

**Exclusions:** This warranty does not extend to defects caused directly or indirectly by:
- Acts of God, including storms, wind, floods, and fire;
- Vandalism or other criminal acts;
- Failure to diligently follow recommended maintenance or upkeep procedures or practices and use of incompatible devices or accessories;
- Any normal wear and tear; fading or normal aging or use discoloration;
- Pre-existing conditions or failure of any supporting structure not constructed by us;
- Any work, changes or, modifications performed by Customer or by persons hired by Customer or by others not our employees, agent or contractors or not otherwise under our direction or control
- Use of incorrect line voltages fuses or circuit breakers; a 12 gauge wire must be run less than 200 feet

**Limitation on damages:**
JGeiger will not be liable for any consequential, incidental, exemplary or special damages (including, damages related to any  personal injury, failure to meet any duty, including of good faith or reasonable care, negligence, or any other loss whatsoever), nor for any repair work undertaken without JGeiger's prior written consent, deinstallation, or inability to use the Shading.

**Customer Duties/ How to notify us:**
Report any defect as soon as you the Customer notice it, and cooperate in the process of remedying the problem.
Contact us as soon as the after the issue or defect first becomes evident;
Cooperate fully in providing access to the premises during our normal business hours. See our contact information below.

**Contact Information:**
Contact JGeiger with the number provided below with questions concerning the installation or operation of the System or this Warranty, or to make a warranty claim. Please provide the exact model number when calling. USA (Monday – Thursday, 8:00am–7:00pm) (Friday, 8:00am–5:00pm)

**(844)-543-4437**
http://www.jgeigershading.com

NOT A CERTIFIED COPY

QUO-01948-Y5L5X9

Filing # 105330650 E-Filed 03/24/2020 09:50:07 AM

## RETURN OF SERVICE

State of Florida                    County of Palm Beach                    15th Judicial Circuit Court

Case Number: 502020CA002208XXXXMB

Plaintiff:
MATHIEU ROSINSKY,

vs.

Defendant:
GEIGTECH EAST BAY, LLC d/b/a J GEIGER a/k/a JGEIGER SHADING TECHNOLOGY, a
South Carolina limited liability company,

For:
Daniel A. Thomas, Esq.
Mrachek, Fitgerald, Rose, Konopka, Thomas & Weiss, P.A.
505 South Flagler Drive
Suite 600
West Palm Beach, FL 33401

Received by Rock Legal Services on the 28th day of February, 2020 at 1:51 pm to be served on Geigtech East Bay, LLC d/b/a J
Geiger a/k/a JGeiger Shading Technology by serving: Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading
Technology c/o Registered Agent: Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

I, Christopher Compton, do hereby affirm that on the 2nd day of March, 2020 at 1:00 pm, I:

**SERVED** the within named **LIMITED LIABILITY COMPANY** by delivering a true copy of the Summons
and Complaint with the date and hour of service endorsed thereon by me to: **KANEISHA GROSS** as
employee of the **Registered Agent for Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading
Technology at 1201 Hays Street, Tallahassee, FL 32301** and informed said person of the contents therein, in
compliance with 48.062.

Description of Person Served: Age: 30, Sex: F, Race/Skin Color: BLACK, Height: 5'8, Weight: 175, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the
Second Judicial Circuit in which the process was served. Under penalty of perjury I declare I have read the foregoing documents and
that the facts stated in it are true. Notary not required pursuant to FL Statute 92.525 Sec (2)



Christopher Compton
Certified Process Server # 101

Rock Legal Services
2048 Ponce De Leon Ave
West Palm Beach, FL 33407
(561) 296-7574

Our Job Serial Number: ROC-2020003353

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.0n

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

Case Number: 50-2020-CA-002208-XXXX-MB
Division:     AJ: Circuit Civil Central - AJ (Civil)

MATHIEU ROSINSKY,
     Plaintiff(s),
  vs.

GEIGTECH EAST BAY LLC DBA J GEIGER AKA JGEIGER
SHADING TECHNOLOGY A SOUTH CAROLINA LLC
     Defendant(s).

## DEFAULT

A default is entered in the above styled cause against:

**GEIGTECH EAST BAY LLC DBA J GEIGER AKA
JGEIGER SHADING TECHNOLOGY**

for failure to serve or file any pleading or document as required by law.

Dated on: 2nd of April, 2020.

**Sharon R. Bock**
**Clerk & Comptroller**



By:    _____

Sherrod, Kattie M as Deputy Clerk

☐ Copies Not furnished – envelopes not provided.
☒ Copies furnished to: DANIEL A THOMAS, ESQ  DTHOMAS@MRACHEK-LAW.COM

PLAINTIFF'S
EXHIBIT
2

Blumberg No. 5113

FILED: PALM BEACH COUNTY, FL SHARON R BOCK, CLERK. 04/02/2020 04:31:37 PM

Filing # 105829123 E-Filed 04/03/2020 11:01:06 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ
CASE NO. 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINSKY,
  Plaintiff/Petitioner
vs.
GEIGTECH EAST BAY LLC,
  Defendant/Respondent.
_____/



## ORDER SETTING HEARING
### (telephonic appearance via (877) 524-1194; conference ID 442648)

The following Matter has been specially set for hearing before JUDGE SCOTT KERNER in Courtroom 6A of the Palm Beach County Courthouse, 205 N. Dixie Highway, West Palm Beach, FL 33401:

**DATE:** Tuesday, April 21st, 2020
**TIME:** 10:30 AM
**MATTER:** Plaintiff's Motion for Default Judgment of Liability Against Defendant

The Attorneys/Parties must submit directly to the Court no later than seven (7) days prior to the hearing:

1. Copies of all relevant pleadings by mail
2. Copies of case law authority

Page 1 of 3

FILED: PALM BEACH COUNTY, FL, SHARON R. BOCK, CLERK, 04/03/2020 11:01:06 AM

Case No. 50-2020-CA-002208-XXXX-MB

**NOTE: This hearing is specially set by Court Order and CANNOT BE CANCELLED, RESET OR ADDED ON TO EXCEPT BY FURTHER COURT ORDER.**

One or more of the parties who may be affected by the motion are self represented.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Palm Beach County, Florida.

50-2020-CA-002208-XXXX-MB    04/03/2020
Scott Kerner
Judge

Copies furnished:

| | | |
|---|---|---|
| GEIGTECH EAST BAY LLC | 1201 HAYS STREET TALLAHASSEE, FL 32301 | No E-mail Address Available |
| DANIEL A THOMAS | 505 S FLAGLER DRIVE SUITE 600 WEST PALM BEACH, FL 33401-5945 | dthomas@mrachek-law.com hbranstrom@mrachek-law.com dthomas@mrachek-law.com |
| ERICA LESTER SADOWSKI | No Address Available | esadowski@mrachek-law.com |

Case No. 50-2020-CA-002208-XXXX-MB

This notice is provided pursuant to Administrative Order No. 2.207

"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact , Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."

"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con , 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."

"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte , kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."

Filing # 106091905 E-Filed 04/09/2020 04:45:45 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

     Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

     Defendant.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESS

PLEASE TAKE NOTICE that Kim & Lahey Law Firm, LLC hereby enters this Notice of

Appearance on behalf of Defendant, GEIGTECH EAST BAY, LLC d/b/A J GEIGER a/k/a

JGEIGER SHADING TECHNOLOGY, a South Carolina limited liability company, in the

above-styled cause.

IT IS HEREBY requested that the undersigned counsel be forwarded a true and correct

copy of any and all pleadings filed in this cause.

### DESIGNATION OF E-MAIL ADDRESS

Kim & Lahey Law Firm, LLC designates the following e-mail address for service

pursuant to Fla. R. of Jud. Admin. 2.156:

**JRosen@kimandlahey.com**

Page **1** of **2**

DATED this 9th day of April, 2020.

Respectfully submitted,

**KIM AND LAHEY LAW FIRM, LLC**

*s/ Jason E. Rosen*
Jason E. Rosen, Esq.
3620 Pelham Road, PMB # 213
Greenville, South Carolina 29615
Tel: 864.973.6688
Fax: 864.286.3282
Fla. Bar No.: 96118
Email: JRosen@kimandlahey.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 9th day of April, 2020 via the Florida Courts E-Filing Portal to counsel for Plaintiff, Daniel A. Thomas, Esq. at dthomas@mrachek-law.com and Erica Lester Sadowski, Esq. at esadowski@mrachek-law.com.

*s/ Jason E. Rosen*
JASON E. ROSEN

Filing # 106145202 E-Filed 04/13/2020 10:10:51 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO: 502020CA002208XXXXMB AJ


MATHIEU ROSINSKY,

     Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

     Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT

Plaintiff, Mathieu Rosinsky, pursuant to Fla. R. Civ. P. 1.350, requests that Defendant,

Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, respond and produce

the following documents at the office of the undersigned attorney within the time prescribed by

Florida law.

### INSTRUCTIONS

Compliance with these requests is requested to be made in accordance with the following:

    A.    Color copies shall be provided if the original or copy in your possession, custody
or control is in color.

    B.    All electronic Documents shall be produced in their native format. Please contact
the undersigned to coordinate proper production of such documents in the proper format.

1

NOT A CERTIFIED COPY

## DEFINITIONS

A.      "JGeiger," "you," and "your" shall mean, Geigtech East Bay, LLC d/b/a J Geiger a/k/a JGeiger Shading Technology, including all of its agents, employees, servants, subsidiaries, parent company(ies), attorneys, officers, directors, predecessors and successors in interests, representatives, and any other person or entity acting or purporting to act on its behalf or under its control.

B.      "Rosinksy" shall mean Mathieu Rosinsky, including his representatives, trustees, relatives, contractors, architects, affiliates, agents, attorneys and owners/principals.

C.      "Home" shall refer to the residence located at 7 Lagomar Road, Palm Beach, Florida at 7 Lagomar Road.

D.      "Project" shall refer to the installation and supply of an interior shading system that JGeiger provided for the Home in or about August 2017.

E.      "Document" shall include all documents within the ambit of how "documents" is defined in Rule 1.350(a) of the Florida Rules of Civil Procedure, and shall also include all documents falling within the ambit of the following designation:  the original and any copy, regardless of its origin and location, of all writings of any kind whatsoever including, but not limited to, all abstracts, accounting journals, accounting ledgers, advertisements, affidavits, agendas, agreements or proposed agreements, analyses, appointment books, appraisals, articles of incorporation, balance sheets, bank checks, bank deposit or withdrawal slips, bank credit or debit memoranda, bank statements, blueprints, books, books of account, budgets, bulletins, bylaws, canceled checks, charts, checks, codes, communications, including communications with other government bodies, computer data or printouts, concurrency analyses, conferences, contracts, correspondence, data processing cards, data sheets, desk calendars, details, diagrams, diaries, disks or data compilations from which information can be obtained or translated, drafts, drawings, electromagnetic tapes, electronic mail ("e-mail") or paper copies of e-mail, electronically stored information ("ESI"), files, films, financial calculations, financial projections, financial statements, graphs, handwritten notes or comments however produced or reproduced, indexes, insertions, instructions, internal accounting records, interoffice communications, invoices, ledgers, letters, lists, logbooks, manuals, memoranda, microfilm, minutes of meetings, motion pictures, newspaper or magazine articles, networks, nonconforming copies which contain deletions, notations or records of meetings, notes, notices of wire transfer of funds, outlines, pamphlets, papers, passbooks, periodicals, photocopies, photographs, pictures, plans, preliminary drafts, press releases, proposals, publications, punch cards, raw and refined data, receipts, recommendations, records, records of conferences or conversations or meetings, records of payment, reports, resolutions, results of investigations, schedules, schematics, shipping, papers, slides, specifications,. speeches, statements of account, studies, summaries, surveys, tape recordings, tax returns, telegrams, telephone logs and records, telephone and other conversations or communications, teletypes, telexes, traffic studies, transcripts, transcripts of tape recordings, video tapes, voice records, vouchers, work papers, worksheets, written notations, and any and all other papers similar to any of the foregoing. Any document containing any alterations, comments, notes or other material not included in the copies or originals or referred to in the preceding definition

2

shall be deemed a separate document within said definition. Any document shall include all exhibits, schedules or other writings affected by or referenced in any such document or other writings necessary to complete the information contained therein or make it not misleading. To the extent not clarified above, the term "document" or "documents" includes emails and other electronic communications which may or may not be reduced to hard copy in the normal course of business and which may be stored or archived on file servers, hard drives, hard or floppy diskettes, compact discs, backup tapes, or other storage media.

F.      With respect to "Documents," the term "identify" means: (i) state the author or writer thereof and the parties thereto; (ii) state its title or other identifying data; (iii) state the date of the document or if no date, state the exact nature and substance thereof; (iv) identify each person having possession, care, custody or control of the original and copies thereof; and (v) if such documents were, but no longer are in your possession or subject to your control, state what disposition was made of its and who is in control of same.

G.      "Communication" means any oral or written statement, e-mail, letter, correspondence, facsimile, telephonic, radio, dialog, colloquy, discussion or conversation, meetings, telegrams, telecopies, text messages, video messages, conferences, writings, letters, messages, notes, memoranda, and also means any transfer of thoughts or ideas between persons by means of documents and includes any transfer of data from one location to another by electronic or similar means.

H.      "Related to," "relating to" or "regarding" shall mean directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

I.      The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any responses to interrogatories, documents, or communications, which might otherwise be construed to be outside the scope hereof.

J.      "Evidencing" means having a tendency to show, prove or disprove.

K.      "This action" or "this lawsuit" refers to the above-styled case.

L.      "Person" means any natural person, corporation, partnership, proprietorship, association, organization, governmental entity, or group of natural persons.

## REQUEST FOR PRODUCTION

1.      Your entire file for the Project or any work you performed at the Home or for Rosinsky.

3

2.      The contract for the Project or any work you performed at the Home, including all change orders (including all proposed change orders, drafts, markups, and both signed and unsigned versions of change orders).

3.      All applications and requests for payment for the Project or work you performed at the Home or for Rosinsky, including all backup documentation, whether submitted with the original applications/requests for payment or not.

4.      All Documents related to insurance (including all non-privileged correspondence and emails) for the Project or work you performed at the Home or for Rosinsky.  Please include all Documents exchanged with or received from any third party or insurer regarding the Project or your work on the Home, including all certificates of insurance, insurance policies, invoicing and premium notices (including any cancellation notices) for any insurance coverages that may apply or relate to, or arise out of:  a) this lawsuit; b) the Project; or c) the work on the Home by JGeiger or any of its lower tiers or suppliers.

5.      All Documents and correspondence wherein you requested indemnification or contribution for this lawsuit, the Project, or your work on the Home.

6.      All Documents filed with or received from any governmental agency or representative, including building inspectors, relating to the Project.

7.      All subcontracts, purchase orders, and written agreements (including any change orders or modifications/addenda) with any contractor, subcontractor, or supplier that you hired or entered into an agreement with for performance of the Project.

8.      All time sheets, time cards or other Documents indicating or reflecting the number and names of all individuals employed by JGeiger or otherwise, who performed work on the Home at any time.

4

9.      All Documents relating to any deposits or material purchases for the Project.

10.     All Documents relating to any design (including specifications, submittals, and as-built plans) planning, or surveying for the Project.

11.     To the extent not already produced, all Documents exchanged between you and any architect, contractor, subcontractor, material supplier, or laborer (and any of their respective insurers) regarding the Project or this lawsuit.

12.     All non-privileged Documents exchanged with or received from any consultant or expert regarding the Project, including any and all expert reports that describe the defects upon which Rosinsky's claim is made.

13.     The plans and any other Documents used by JGeiger in preparing its estimate(s) for performance of the Project.

14.     All schedules, schedule updates, look-aheads, or other time-related or duration related documents pertaining to performance of the Project.

15.     All Documents, including minutes, relating to or emanating from any meeting relating to project management or performance of the Project.

16.     All requests for information submitted to the Owner or any design professional for the Project.

17.     All non-privileged Documents, including email text messages, between JGeiger and any third party (i.e., everyone other than Mathieu Rosinsky) relating to the Project or work you performed at the Home or for Rosinsky.

18.     All photographs, drawings, sketches, renderings, models, plats, maps, motion pictures, or videos relating to the Project or defects claimed in Rosinsky's communications to JGeiger.

5

19.     To the extent not already requested, any documents related to the discovery, investigation, causation, and extent of the alleged defects Rosinsky identified in communications to JGeiger, and any resulting damages.

20.     All Documents reflecting or relating to communications between JGeiger and Rosinsky relating to the Project.

Respectfully Submitted,

By:     s/DANIEL A. THOMAS
        DANIEL A. THOMAS
        Florida Bar No. 168262
        dthomas@mrachek-law.com
        ERICA LESTER SADOWSKI
        Florida Bar No. 0795291
        esadowski@mrachek-law.com
        MRACHEK, FITZGERALD, ROSE,
            KONOPKA, THOMAS & WEISS, P.A.
        505 South Flagler, Suite 600
        West Palm Beach, Florida 33401-5945
        Telephone:  561-655-2250
        Facsimile:  561-655-5537
        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served on April 13, 2020, via an automatic email generated by the Florida Courts E-Filing Portal to all counsel of record identified on the below Service List.

By:     s/Daniel A. Thomas
        DANIEL A. THOMAS

## SERVICE LIST

**Jason E. Rosen, Esq.**
KIM AND LAHEY LAW FIRM, LLC
*Counsel for Defendant*
3620 Pelham Road, PMB #213
Greenville, South Carolina 29615
(864) 973-6688
JRosen@kimandlahey.com

6

Filing # 106251649 E-Filed 04/14/2020 07:12:22 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

       Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

       Defendant.

_____/

## DEFENDANT GEIGTECH EAST BAY, LLC VERIFIED MOTION TO VACATE CLERK'S DEFAULT

COMES NOW, Defendant, GEIGTECH EAST BAY, LLC d/b/A J GEIGER a/k/a

JGEIGER SHADING TECHNOLOGY, a South Carolina limited liability company (hereinafter

referred to as "GEB LLC"), pursuant to Rules 1.500(d) and 1.540(b) of the Florida Rules of Civil

Procedure, by and through its undersigned counsel, hereby moves to vacate the Clerk's default

entered against it in this action, and states as follows:

### I.    Introduction

Plaintiff is suing GEB LLC for alleged breaches of contract and warranty regarding the

2017 sale/purchase of a GEB LLC shading system. Until the filing of this suit, the parties hereto

have been working closely to resolve the alleged issues both with and without counsel shortly

after their relationship began in 2017. Based on the parties' course of conduct and because it had

not heard otherwise, GEB LLC was under the impression that this matter was being resolved

Page 1 of 13

through negotiations by the parties' counsel outside of the courtroom. In fact, it was this belief that set the stage of GEB LLC's failure to timely respond to Plaintiff's complaint. Indeed, GEB LLC's registered agent in Florida accepted service on their behalf, however, GEB LLC truly "learned" of this lawsuit on April 9, 2020 when they received the April 3, 2020 Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability Against Defendant. In a perfect storm of events, GEB LLC suffered a corporate communication breakdown exacerbated by the immediate business and safety responses caused by the COVID-19 pandemic leading to changes in management, furlough and/or termination of employees, and indefinite holds on multiple projects.

The parties in this case have a history dating back to 2017 wherein negotiations commenced for the purchase and installation of GEB LLC products in the Plaintiff's residence (hereinafter referred to as the "Product"). The Product was installed in or around 2018. Following the installation of the Product, Plaintiff expressed dissatisfaction with its performance. GEB LLC returned to the Plaintiff's residence on multiple occasions to service the Product and cure any alleged Product deficiencies. In fact, Plaintiff acknowledged in a December 4, 2018 email to GEB LLC that the shades were now performing as he had hoped. Unfortunately, this satisfaction dissipated, and the parties continued to work together to try and resolve the issue.

Eventually, Plaintiff retained counsel to negotiate a resolution with GEB LLC counsel. Sometime after these negotiations commenced, and unbeknownst to GEB LLC or undersigned's office, Plaintiff retained a new attorney, Daniel Thomas, Esq. On or around January 27, 2020, Mr. Thomas sent a demand letter to Alex Gustafson, the Senior Sales and Design Consultant of GEB LLC demanding performance that exceeded the bounds of the agreement between the parties and threatened suit. Though Plaintiff had actual knowledge that GEB LLC was

represented by counsel, this communication was sent to a GEB LLC employee who was not in a management role.

On or around February 7, 2020, counsel for GEB LLC responded to Plaintiff's counsel and invited Plaintiff to work with GEB LLC to resolve any alleged Product deficiencies. This was the final communication between the parties. While GEB LLC awaited a response from Plaintiff's counsel regarding the February 7th letter, Plaintiff instead, initiated the instant action and served Corporation Service Company ("CSC"), GEB LLC's registered agent. Neither GEB LLC nor its counsel had any inkling from Plaintiff or his attorney that negotiations terminated, and litigation had commenced.

As discussed below in the memorandum of law, GEB LLC neither deliberately nor unintentionally ignored or failed to respond to Plaintiff's complaint. The fact that Mr. Rosinsky filed suit did not seem to register with GEB LLC who, based on the current conduct of the parties (1) had reasonably presumed that this matter was still in negotiations and (2) was in the midst of making strategic decisions regarding management and employee realignments and project holds/cancellations caused by the unexpected COVID-19 pandemic.

Based on the instant verified motion, sworn affidavits, and the proposed Answer and Affirmative Defenses, this Court should grant GEB LLC's Motion to Vacate the Clerk's default so that this matter may be decided on its merits pursuant to public policy and applicable law discussed below.

II. **Memorandum of Law**

According to the Fourth DCA, "Florida courts have a liberal policy of vacating defaults in order to decide cases on their merits." *Taylor v. Vitetta*, 8 So.3d 1216, 1217 (Fla. 4th DCA 2009), *citing Gibson trust, Inc. v. Office of the Attorney Gen.*, 883 So.2d 379, 382 (Fla. 4th DCA

2004), *See Elliot v. Aurora Loan Services, LLC*, 31 So.3d 304, 306-07 (Fla. 4th DCA 2010) ("Florida public policy favors the setting aside of defaults so that controversies may be decided on the merits.") (internal citations omitted). This Court should grant GEB LLC's motion to vacate the Clerk's default as a matter of law because (a) the Plaintiff failed to provide GEB LLC's counsel with notice of its application for default when he had actual knowledge that GEB LLC was represented by counsel that intended to defend this matter and (b) pursuant to Rules 1.500(d) and 1.540(b) of the Florida Rules of Civil Procedure, GEB LLC's failure to file a responsive pleading was (1) the result of excusable neglect; (2) there are multiple meritorious defenses; and (3) in a showing of reasonable diligence.

### A. Plaintiff Had Knowledge GEB LLC Was Represented by Counsel

"An ex parte default should be set aside where the plaintiff seeking default had actual knowledge that the defendant was represented by counsel and intended to defend the lawsuit, but failed to contact the defendant's counsel prior to seeking default." *National Union Fire Insurance Company of Pittsburgh, P.A. v. McWilliams*, 799 Soo.2d 378, 380 (Fla. 4th DCA 2001), In *Apple Premium Finance Service Company, v. Teachers Insurance and Annuity Association of America*, 727 So.2d 1089 (Fla. 3d DCA 1999), a case with similar facts to the instant matter, the plaintiff filed suit while counsel for the parties engaged in pre-suit negotiations. *Id.* Defendant failed to respond to the suit and inform their counsel of the same because they mistakenly believed their counsel would be served directly by plaintiff's counsel. *Id.* Additionally, defense counsel was not informed of the suit by plaintiff's counsel. *Id.* Shortly thereafter, plaintiff moved for default without notifying defendant's counsel of the same. The Court held the clerk's default should be vacated, namely, because notice of an application for

default should <u>always</u> be served by counsel who had expressed an intention to defend on the merits like defendant's counsel.

Here, Plaintiff was well are that GEB LLC was represented by counsel who expressed an intent to defend this matter on its merits because this occurred with Plaintiff's prior and current counsel. Most recently, the parties' counsel conducted pre-suit negotiations by way of written correspondence on January 27, 2020 and February 7, 2020. At no time did Plaintiff's lawyer notify GEB LLC's counsel of the instant suit nor his application to the Clerk for an entry of default.

For the foregoing reason, this Court should vacate the Clerk's entry of default.

## B. SETTING ASIDE THE DEFAULT

A party seeking to set aside a clerk's default or a default judgment must demonstrate a (1) the failure to file a responsive pleading was the result of excusable neglect; (2) the party has a meritorious defense; and (3) the party has been reasonably diligent in seeking to vacate the default after it was discovered." *Chetu, Inc. v. Franklin First Financial, Ltd.*, 276 So.3d 39 (4th DCA 2019).

### 1. Excusable Neglect

Excusable neglect is found "…where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry, or any other of the foibles to which human nature is heir. *Somero v. Hendry General Hosp.*, 467 So.2d 1103, 1106 (Fla. 4th DCA 1985). The *Somero* court also held:

> The pattern which emerges from these and the myriad of cases not cited here is best stated **negatively**: a default will not be set aside where the defaulted party or his attorney (1) simply forgot or (2) intentionally ignored the necessity to take appropriate action; that is to say, where the conduct could reasonably be characterized as partaking of gross negligence or as constituting willful and intentional refusal to act. The failure to state any factual grounds upon which the

Page 5 of 13

movant relies has also been held to be an insufficient basis for setting aside a default.

*Somero v. Hendry General Hosp.*, 467 So.2d at 1105-06. (emphasis added).

On March 2, 2020, CSC accepted service of Plaintiff's complaint on behalf of GEB LLC. As illustrated in the chart below and the attached affidavits (**Exhibit A**), the complaint made its way to GEB LLC on March 8th where it went misunderstood as another part of the negotiation process.

| Date | From | To | Events |
|---|---|---|---|
| 3/6/2020 | CSC | Scott Silver | CSC provides complaint to GEB LLC affiliate |
| 3/6/2020 | Scott Silver | Scott Linthicum | Affiliate sends complaint to GEB LLC board member |
| | Scott Linthicum | Jeff Martens | GEB LLC board member verbally informs GEB LLC CEO that it had received service of process from Mathieu Rosinsky. No documents were provided to Mr. Martens. |
| 4/1/2020 | GEB LLC | Jeff Martens | GEB LLC terminates Mr. Martens employment. |
| | GEB LLC | John Nix | John Nix, COO of GEB LLC is named CEO |
| 4/9/2020 | CSC | Scott Silver | Receipt of Order Setting |

Page **6** of **13**

| | | | Hearing on Plaintiff's Motion for Default Judgment of Liability Against Defendant |
|---|---|---|---|
| | Scott Silver | Scott Linthicum | Forwards Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability Against Defendant |
| | Scott Linthicum | John Nix | Forwards Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability Against Defendant |

In sum, and as stated in sworn affidavits, the complaint went from the registered agent to GEB LLC affiliates and eventually to Scott Linthicum who verbally communicated its existence as "service of process" to former CEO Jeff Martens. Both Mr. Linthicum and Mr. Martens attest that the lawsuit was not sent to Mr. Martens by Mr. Linthicum. Mr. Martens further states in his affidavit that he did not receive the lawsuit documents from any other party. In addition to the foregoing, Mr. Martens does not recall Mr. Linthicum saying the words "lawsuit" or "service of process" used to describe the instant matter. In fact, Mr. Martens was still under the impression

Page **7** of **13**

that GEB LLC was waiting for Plaintiff's response to GEB LLC counsel's February 7, 2020 letter.

Shortly after the lawsuit was filed, the COVID-19 pandemic became the large focus of GEB LLC and the world. Within weeks of the lawsuits service, Mr. Martens' employment was terminated and GEB LLC was heavily entrenched into reacting to COVID-19 as an employer and as a business.

In sum, the combination of a corporate communication breakdown between multiple entities, a worldwide pandemic, and opposing counsel providing no notice of a lawsuit or application for a clerk's default exemplifies the definition of "excusable neglect, "…where inaction results from clerical or secretarial error, reasonable misunderstanding, a system gone awry, or any other of the foibles to which human nature is heir. *Somero v. Hendry General Hosp.*, 467 So.2d 1103, 1106 (Fla. 4th DCA 1985). This why counsel was not informed of the suit, no response was filed, and no action was taken until receipt of the April 3, 2020 Order setting a hearing.

## 2. Meritorious Defense

"In the context of a motion to set aside a default, 'meritorious' means simply that the defendant plans to raise a defense that may have some merit. The movant need only show that the defense it has raised is meritorious, not that it is likely to succeed." *Household Finance Corp., III v. Mitchell*, 51 So.3d 1238, 1241 (Fla. 5th DCA 2011) (internal citations omitted). "A meritorious defense is established where a 'proposed answer [is] attached to its motion to vacate, which answer sets out in detail a number of affirmative defenses." *Elliot v. Aurora Loan Services, LLC*, 31 So.3d 304, 308 (Fla. 4th DCA 2010), *quoting Fortune Ins. Co. v. Sanchez*, 490 So.2d 249 (Fla. 3d DCA 1986). "A general denial does not rise to the level of a meritorious

defense. However, affirmative defenses, even when pled with minimal specificity, can qualify as meritorious." *Household Finance Corp., III v. Mitchell*, 51 So.3d at 1241 (internal citations omitted).

Plaintiff's Complaint alleges two causes of action against GEB LLC, breach of contract (Count I) and breach of warranty (Count II) (hereinafter referred to as the "Complaint"). Here, GEB LLC performed its contractual and warranty obligations by providing and installing the agreed upon shades and hardware and curing any alleged defects. Despite contractual limitations included in the exhibits to the Complaint that negate the same, the essence of Plaintiff's allegations is GEB LLC's alleged failure to cure purported Product deficiencies. Because this matter has been on-going since 2017, there are over two years of evidence that a trier of fact must consider in ruling on the merits of this case, including a 2018 email from Plaintiff to GEB LLC expressing that the Product was functioning properly.

It is GEB LLC's contention that it fulfilled its obligations both under the contract and warranty such that Plaintiff would be unable to meet his burden proving otherwise. GEB LLC would assert multiple affirmative defenses as stated in the proposed Answer and Affirmative Defenses, including but not limited to: (a) the exhibits included in Plaintiff's Complaint limit GEB LLC performance and damages; (b) Plaintiff improperly maintained the Product; (c) Plaintiff agreed in the contract documents that certain actions taken by Plaintiff exclude GEB LLC's liability; and (d) the exhibits attached to the Complaint negate the allegations in the Complaint. **See Exhibit B.**

In sum, GEB LLC has multiple meritorious defenses in this matter. At this stage, it is only required that GEB LLC show that it plans to raise a defense that may have some merit.

GEB LLC has met this element by providing the attached proposed Answer and Affirmative Defenses. "*Elliot v. Aurora Loan Services, LLC*, 31 So.3d 304, 308 (Fla. 4th DCA 2010).

### 3. Reasonable Diligence by the Defendant

GEB LLC has established reasonable diligence by its quick challenge to the clerk's default prior to the entry of judgment. *Hunt Exterminating Co., Inc. v. Crum*, 598 So.2d 113, 114 (Fla. 2d DCA 1992). "In such a case, the plaintiff's claim has not bested as a final judgment. The defendant's neglect is at least more excusable in the sense that the neglect has not existed for a long time. Thus, these factors typically weigh more favorably for setting aside a default as compared to a default judgment." *Id.*

Due diligence, a test of reasonableness, must be evaluated based on facts of the particular case established by evidence such as sworn affidavits. *Elliot v. Aurora Loan Services, LLC*, 31 So.3d 304, 308 (Fla. 4th DCA 2010). In *Elliot,* the Fourth Circuit held that the filing of a motion to vacate six (6) days after discovery of the clerk's default. *Id.* In its holding, the *Elliot* Court cited multiple cases that found six (6), seven (7), and fifteen (15) day lapses between the discovery of default and the filing of a motion to vacate that default showed due diligence. *Id., See Allstate Floridian Ins. Co. v. Ronco Investments, LLC*, 890 So. 2d 300, 3030 (Fla. 2d DCA 2004) (six-day delay); *Coquina Beach Club Condo Ass'n v. Wagner*, 813 So.2d 1061 (Fla. 2d DCA 2002) (seven-day delay); *Marshall Davis, Inc. v. Incapco, Inc.*, 558 So.3d 206 (Fla. 2d DCA 1990) (fifteen-day delay).

Here, GEB LLC learned of the upcoming default hearing on April 9, 2020 and immediately notified counsel. **See Exhibit A**. Undersigned filed his notice of appearance in this matter that same day followed by the quick filing of the instant motion and supporting exhibits. Under Florida law, reasonableness was found when defendants sought to vacate a default, days, weeks, and even

half a month after discovery of the same. GEB LLC filed its motion to vacate the clerk's default and supporting exhibits less than a week after its discovery. Therefore, under Florida law, this Court must find that GEB LLC showed reasonable diligence.

### III.   Conclusion

Based upon the foregoing, this Court should grant GEB LLC's Verified Motion to Vacate because (a) it has demonstrated that Plaintiff's counsel failed to notify GEB LLC's counsel of its application for entry of the Clerk's default and (b) its failure to file a responsive pleading was (1) the result of excusable neglect; (2) there are multiple meritorious defenses; and (3) in a showing of reasonable diligence, GEB LLC filed the instant motion and supporting exhibits days after learning about the default hearing. All of GEB LLC's legal and factual arguments are substantiated, as required by Florida law, with the instant verified motion, sworn affidavits of Scott Linthicum, John Nix, and Jeff Martens, and the proposed Answer and Affirmative defenses. Vacating the default is proper under both Florida's public policy and the Court's liberal policy of vacating defaults and public policy so that controversies may be decided on the merits. *See Taylor v. Vitetta*, 8 So.3d 1216, 1217 (Fla. 4th DCA 2009); *Elliot v. Aurora Loan Services, LLC*, 31 So.3d 304, 306-07 (Fla. 4th DCA 2010).

WHEREFORE, Defendant, Geigtech East Bay, LLC d/a/a J Geiger a/k/a JGeiger Shading Technology respectfully request this grant the Verified Motion to Vacate the Default and other relief deemed fair and just.

DATED this 14th day of April, 2020.

Respectfully submitted,

**KIM AND LAHEY LAW FIRM, LLC**

s/ *Jason E. Rosen*
Jason E. Rosen, Esq.

Page **11** of **13**

3620 Pelham Road, PMB # 213
Greenville, South Carolina 29615
Tel: 864.973.6688
Fax: 864.286.3282
Fla. Bar No.: 96118
Email: JRosen@kimandlahey.com

I understand that I am swearing or affirming under oath to the truthfulness of the claims made in this motion and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Dated: 4-14-2020

Signature:

Printed Name: John Nix
Address: 3339 Business Circle
City, State, Zip: North Charleston, SC 29418
Fax Number: N/A
Designated E-mail Address(es): jnix@j-geiger.com
STATE OF South Carolina

COUNTY OF Charleston

Sworn to or affirmed and signed before me on 14th of April 2020 by

John Nix .

NOTARY PUBLIC or DEPUTY CLERK

Alysa Floercky
{Print, type, or stamp commissioned name of notary or clerk.}

X Personally known.

_____ Produced identification

Type of identification produced _____

Page **12** of **13**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 14th

day of April, 2020 via the Florida Courts E-Filing Portal to counsel for Plaintiff, Daniel A. Thomas,

Esq. at dthomas@mrachek-law.com and Erica Lester Sadowski, Esq. at esadowski@mrachek-

law.com.

s/ Jason E. Rosen
JASON E. ROSEN

Page **13** of **13**

# EXHIBIT A

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

       Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

       Defendant.

_____/

## AFFIDAVIT

The undersigned being first duly sworn deposes and states upon his oath the following:

1. My name is Jennifer Cooper, I am a Legal Coordinator for Resurgent Capital Services, LP, an affiliate of Geigtech East Bay, LLC ("GEB LLC"), the defendant in the captioned case. I am of sound mind, over the age of eighteen years and competent to provide this Affidavit.

2. On March 6, 2020, I received a summons and complaint regarding the instant matter from Corporation Service Company, the registered agent for GEB LLC. That same day, I forwarded the summons and complaint to Scott Silver, General Counsel for or Sherman Capital Markets, LLC, an affiliate of Resurgent Capital Services, LP and GEB LLC.

3. From the time I forwarded the CSC email and attachment to Scott Silver, I was not a party to any conversation or correspondence regarding the instant lawsuit.

4. On April 9, 2020, I received additional documents regarding the instant matter from

CSC and forwarded the same to Scott Silver.

5. Other than the foregoing, I had no other involvement in this matter.

6. I swear that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT.

_____
Jennifer Cooper

Subscribed and sworn to before me this 14th day of April, 2020.

SEAL:

NOTARY PUBLIC

11·18·2024
COMMISSION EXPIRES

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

       Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

       Defendant.

_____/

## AFFIDAVIT

The undersigned being first duly sworn deposes and states upon his oath the following:

1.  My name is Scott Silver I am the general counsel for Sherman Capital Markets, LLC an affiliate of Geigtech East Bay, LLC ("GEB LLC"), the defendant in the captioned case. I am of sound mind, over the age of eighteen years and competent to provide this Affidavit.

2.  On March 6, 2020, I received a copy of the summons and complaint in the instant matter from Jennifer Cooper, Legal Coordinator for Resurgent Capital Services, LP. Earlier that day, Ms. Cooper received correspondence from Corporation Service Company, the registered agent for GEB LLC. That same day, I forwarded the complaint and summons to Scott Linthicum.

3.  From the time I forwarded the summons and complaint to Scott Linthicum, I was not a party to any conversation or correspondence regarding the instant lawsuit.

4.  I was unaware of the status of this lawsuit until April 9, 2020 when I received an

email from Jennifer Cooper which included the attachment of the Order Setting Hearing on

Plaintiff's Motion for Default Judgment of Liability and supporting documentation. I forwarded

the same to Scott Linthicum.

5.   Other than the foregoing, I was not involved in any discussions or correspondence

regarding Mathieu Rosinsky.

6.   I swear that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT.

_____
Scott Silver

Subscribed and sworn to before me this __14__ day of April, 2020.

SEAL:

_____
NOTARY PUBLIC

March 14, 2029
_____
COMMISSION EXPIRES

ALYSA FLOERCKY
NOTARY PUBLIC
My Comm Exp
Mar 14 2029
STATE OF SOUTH CAROLINA

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

      Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

      Defendant.

_____/

## AFFIDAVIT

The undersigned being first duly sworn deposes and states upon his oath the following:

1. My name is Scott Linthicum, I am a Director for Sherman Capital Markets, LLC, a South Carolina limited liability company, an affiliate of Geigtech East Bay, LLC ("GEB LLC"), the defendant in the captioned case. I also serve on the board of directors for GEB LLC. I am of sound mind, over the age of eighteen years and competent to provide this Affidavit.

2. On March 6, 2020, I received an email forward from Scott Silver, General Counsel for Sherman Capital Markets, LLC, an affiliate of GEB LLC. The original email he forwarded was from Jennifer Cooper, Legal Coordinator for Resurgent Capital Services, LP. The email contained an attachment which was the summons and complaint of the instant lawsuit filed by Mathieu Rosinsky. That same day, I called Jeff Martens, the then Chief Executive Officer of GEB LLC and informed him of the service of process. To my recollection, I did not send the summons and complaint to Mr. Martens.

3. Prior to March 6, 2020, I was aware that Jeff Martens was working with counsel for GEB LLC on negotiating a resolution of the Mathieu Rosinsky matter. It was my belief that Mr. Martens would communicate to counsel for GEB LLC the information I verbally delivered regarding the service of process of the Rosinsky lawsuit.

4. I was unaware of the status of this matter until April 9, 2020 when I received a forwarded email from Scott Silver. The original email was from Jennifer Cooper, Legal Coordinator for Resurgent Capital Services, LP. with an included attachment, the Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability and supporting documentation. That same day, I contacted John Nix, the newly installed CEO of GEB LLC and provided him with the Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability and supporting documentation.

5. I swear that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT.

Scott Linthicum

Subscribed and sworn to before me this ___14___ day of April, 2020.

SEAL:

NOTARY PUBLIC

March 14, 2029
COMMISSION EXPIRES

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

       Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

       Defendant.

_____/

## AFFIDAVIT

The undersigned being first duly sworn deposes and states upon his oath the following:

1. My name is John Nix, I am the Chief Executive Officer ("CEO") for Geigtech East Bay, LLC ("GEB LLC"), the defendant in the captioned case. I am of sound mind, over the age of eighteen years and competent to provide this Affidavit.

2. My role as CEO for GEB LLC began on April 1, 2020. Prior to transitioning to the Position of CEO, I served as the Chief Operating Officer of GEB LLC. In this role, I was not directly involved in the Mathieu Rosinsky matter, however, I was aware that GEB LLC was working with counsel to resolve a customer issue in Florida, including the February 7, 2020 letter sent by GEB LLC counsel to Plaintiff's counsel.

3. I did not learn of the Mathieu Rosinsky lawsuit until I received the Order Setting Hearing on Plaintiff's Motion for Default Judgment of Liability on April 9, 2020.

4. I swear that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT.

John Nix

Subscribed and sworn to before me this 14th day of April, 2020.

SEAL:

NOTARY PUBLIC

March 14, 20 29
COMMISSION EXPIRES

# EXHIBIT B

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

      Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

      Defendant.

_____/

### ANSWER AND AFFIRMATIVE DEFENSES[1]

COMES NOW, Defendant, GEIGTECH EAST BAY, LLC d/b/A J GEIGER a/k/a

JGEIGER SHADING TECHNOLOGY, a South Carolina limited liability company (hereinafter

referred to as "Defendant"), by and through its undersigned counsel, hereby submits its Answer

and Affirmative Defenses to Plaintiff's Complaint, and states as follows:

### JURISDICTION, PARTIES, AND VENUE

1. Defendant denies paragraph 1 of the Complaint.

2. Defendant is without sufficient knowledge whether Plaintiff owns the residence located

    at 7 Lagomar Road, Palm Beach, Florida (the "Home"), therefore denies paragraph 2 of

    the Complaint.

---

[1] GEB LLC reserves the right to revise or amen the Proposed Answer and Affirmative Defenses to include, among other things, a counterclaim. Additionally, the proposed Answer and Affirmative does not foreclose the possibility that a motion to dismiss may be appropriate as a response to Plaintiff's Complaint.

3. Defendant admits that it is a limited liability company with its principal place of business in South Carolina and is registered to do business in Florida. Defendant admits that it installs and supplies shading systems. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 3 of the Complaint.

4. Defendant admits that Home is located in Palm Beach County, Florida. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 4 of the Complaint.

5. Defendant denies paragraph 5 of the Complaint.

<u>**GENERAL ALLEGATIONS**</u>

6. Defendant admits that Plaintiff and Defendant entered into a written agreement in or about August 2017.  Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 6 of the Complaint.

7. Defendant admits that it provided the Plaintiff with the document in Exhibit B of the Complaint. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 7 of the Complaint.

8. Defendant admits that the Warranty referred to in paragraph 8 of the Complaint contains the alleged language.

9. Defendant admits paragraph 9 of the Complaint.

10. Defendant is without sufficient of the knowledge and therefore denies all factual allegations and/or legal conclusions in Paragraph 10 and its subparts of the Complaint.

11. Defendant denies paragraph 11 of the Complaint.

12. Defendant admits paragraph 12 of the Complaint.

13. Defendant admits paragraph 13 of the Complaint.

## COUNT I – BREACH OF CONTRACT

14. Defendant denies paragraph 14 of the Complaint.

15. Defendant denies paragraph 15 of the Complaint.

16. Defendant admits paragraph 16 of the Complaint.

17. Defendant denies paragraph 17 of the Complaint.

18. Defendant denies paragraph 18 and its subparts of the Complaint.

## COUNT I I– BREACH OF WARRANTY

19. Defendant denies paragraph 19 of the Complaint.

20. Defendant denies paragraph 20 of the Complaint.

21. Defendant admits paragraph 21 of the Complaint.

22. Defendant denies paragraph 22 of the Complaint.

23. Defendant denies paragraph 23 of the Complaint.

24. Defendant denies paragraph 24 and its subparts of the Complaint.

## ANSWER TO ALL ALLEGATIONS

25. All other allegations not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim on which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Defendant is not legally responsible for property that is not within its possession, custody or control.

### THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff has failed to institute this action within the time required under the

Page 3 of 6

applicable statute of limitations, his claims for relief are barred.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim must fail to the extent that Plaintiff has failed to mitigate his damages.

## FIFTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Contract in this action, Plaintiff contractually agreed that Defendant cannot be liable for any amount beyond the total amounts paid to J Geiger for the good and services sold pursuant to the Contract. See "Limitation of Liability" Exhibit A to the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Contract in this action, Plaintiff contractually agreed that Defendant cannot be liable "for any consequential, indirect, incidental, special, exemplary or punitive damages, lost profits or revenues or diminution in value, arising out of or relating to any breach of these terms, whether or not the possibility of such damages has been disclosed in advance by buyer or could have been reasonably foreseen by owner/agent, regardless of the legal or equitable theory (contract, tort, or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose." See "Limitation of Liability" Exhibit B to the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant provided Plaintiff a one (1) year limited warranty evidenced in Exhibit B of Plaintiff's Complaint. Defendant is not liable for any alleged defects of the initial Product sold and installed or those repaired or replaced, beyond the limited one (1) year warranty. See Exhibit B to the Complaint ("Our Work" and "Warranty Extended to Repairs and Replacements").

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff, in a December 2018 writing, acknowledged the Product was in good working order and the Defendant cured any and all alleged defects.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff improperly maintained some or all of the Product which caused or contributed to the alleged damages.

## TENTH AFFIRMATIVE DEFENSE

Defendant is not liable for defects caused directly or indirectly by any of the listed exclusions. See Exhibit B ("Exclusions") to the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Warranty in this action, Plaintiff contractually agreed that Defendant cannot be liable "for any consequential, incidental, exemplary or special damages (including, damages related to any personal injury, failure to meet any duty, including of good faith or reasonable care, negligence, or any other loss whatsoever), nor for any repair work undertaken without J Geiger's prior written consent, deinstallation, or inability to use the Shading. See Exhibit B ("Limitation of Liability") to the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

The exhibits attached to the Complaint negate the causes of action asserted because the documents attached as an exhibit control. *Fladell v. Palm Beach County Canvassing Bd.*, 772 So.2d 1240, 1242 (Fla. 2000).

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant has neither knowingly nor voluntarily waived any applicable affirmative defense(s) and reserves the right to assert and rely upon such other applicable affirmative defenses

Page 5 of 6

as may become available or apparent during discovery and investigation, as allowed by the Florida

Rules of Civil Procedure.

DATED this ___ day of April, 2020.

Respectfully submitted,

**KIM AND LAHEY LAW FIRM, LLC**

*s/ Jason E. Rosen*
Jason E. Rosen, Esq.
3620 Pelham Road, PMB # 213
Greenville, South Carolina 29615
Tel: 864.973.6688
Fax: 864.286.3282
Fla. Bar No.: 96118
Email: JRosen@kimandlahey.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this ___

day of April, 2020 via the Florida Courts E-Filing Portal to counsel for Plaintiff, Daniel A. Thomas,

Esq. at dthomas@mrachek-law.com and Erica Lester Sadowski, Esq. at esadowski@mrachek-

law.com.

*s/ Jason E. Rosen*
JASON E. ROSEN

Filing # 106264877 E-Filed 04/15/2020 10:42:05 AM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINSKY,

      Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

      Defendant.

_____/

### NOTICE OF FILING EXHIBIT TO DEFENDANT'S MOTION TO VACATE CLERK'S DEFAULT

COMES NOW, Defendant, GEIGTECH EAST BAY, LLC d/b/A J GEIGER a/k/a JGEIGER SHADING TECHNOLOGY, a South Carolina limited liability company (hereinafter referred to as "GEB LLC"), by and through its undersigned counsel, hereby files the following supplemental exhibit to Defendant's Motion to Vacate the Clerk's Default filed on April 14, 2020, and states as follows:

1. On April 14, 2020, GEB LLC filed its Motion to Vacate the Clerk's Default (the "Motion") and the following supporting Exhibits"

    a. Exhibit A – Affidavits of numerous GEB LLC officers, director, and affiliate employees; and

    b. Exhibit B – proposed Answer and Affirmative Defenses.

2. Mentioned in the Motion is GEB LLC's former CEO Jeff Marten's affidavit. Due to an

Page **1** of **2**

inability to access a notary, Jeff Martens affidavit was not executed and filed with the

Motion.

3. The affidavit has since been executed and notarized and is attached to this instant

Notice of Filing to be incorporated and included in Exhibit A of the Motion.

DATED this 15th day of April, 2020.

Respectfully submitted,

**KIM AND LAHEY LAW FIRM, LLC**

*s/ Jason E. Rosen*
Jason E. Rosen, Esq.
3620 Pelham Road, PMB # 213
Greenville, South Carolina 29615
Tel: 864.973.6688
Fax: 864.286.3282
Fla. Bar No.: 96118
Email: JRosen@kimandlahey.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 15th

day of April, 2020 via the Florida Courts E-Filing Portal to counsel for Plaintiff, Daniel A. Thomas,

Esq. at dthomas@mrachek-law.com and Erica Lester Sadowski, Esq. at esadowski@mrachek-

law.com.

*s/ Jason E. Rosen*
JASON E. ROSEN

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINSKY,

       Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

       Defendant.

_____/

## AFFIDAVIT

The undersigned being first duly sworn deposes and states upon his oath the following:

1. My name is Jeff Martens, I was the Chief Executive Officer ("CEO") for Geigtech East Bay, LLC ("GEB LLC"), the defendant in the captioned case. I served as CEO from February 2018 through March 30, 2020. I am of sound mind, over the age of eighteen years and competent to provide this Affidavit.

2. In my role as CEO, I was responsible for monitoring the status and participating in conversations with counsel for GEB LLC regarding legal actions involving GEB LLC.

3. On March 6, 2020, I received a call from Scott Linthicum of Sherman Capital Markets, LLC, an affiliate of GEB LLC. We discussed the Mathieu Rosinsky matter. I have no recollection of being told that GEB LLC was sued by Mr. Rosinski or that a lawsuit or service of process was made on GEB LLC. I do not recall ever receiving the summons or complaint.

4. I was generally aware of the product and installation complaints by Mathieu Rosinsky

Page 1 of 2

that began in 2018. I became involved in assisting GEB LLC counsel with the resolution of Mr. Rosinsky's complaints in or around 2019 until the date of my termination.

5. During March 2020, GEB LLC conducted strategic analysis to best navigate the COVID-19 pandemic. This included the closing of stores and offices, terminating employees, and cancelling or indefinitely postponing scheduled sales and installations. I was also involved in the execution of said strategies. This was my primary focus during March 2020.

6. On March 30, 2020, I was informed by GEB LLC that it was terminating my employment. My last day as an employee of GEB LLC was April 1, 2020.

7. I swear that the foregoing is true and correct.

FURTHER THE AFFIANT SAYETH NOT.

Jeff Martens

Subscribed and sworn to before me this 15th day of April, 2020.

SEAL:

NOTARY PUBLIC- SC         Milly Hamilton Cawley

2/18/25
COMMISSION EXPIRES

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINSKY,

 Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

 Defendant.

_____/

### UNOPPOSED ORDER GRANTING DEFENDANT GEIGTECH EAST BAY, LLC'S VERIFIED MOTION TO VACATE CLERK'S DEFAULT

THIS MATTER having come before the Court on Defendant Geigtech East Bay, LLC's Verified Motion to Vacate Clerk's Default. The Court having reviewed the same, being advised of the agreement of counsel, and being fully and duly advised in the premises, it is

**ORDERED AND ADJUDGED** that

    1.  Defendant Geigtech East Bay, LLC's Verified Motion to Vacate Clerk's Default is hereby **GRANTED**.

    2.  The Clerk's Default entered on April 2, 2020 is hereby **VACATED**.

    3.  Plaintiff's Motion for Default Judgment of Liability against Defendant is therefore **DENIED AS MOOT**.

    4.  Defendant Geigtech East Bay, LLC shall file its Answer, Affirmative Defenses, and any compulsory counterclaim within twenty (20) days from the date of this Order.

    5.  Thereafter, Plaintiff shall file any response or reply within twenty (20) days from the receipt of Defendant's responsive pleading and compulsory counterclaim, if any.

Case No. 50-2020-CA-002208-XXXX-MB

DONE AND ORDERED in Chambers, at West Palm Beach, Palm Beach County, Florida.

50-2020-CA-002208-XXXX-MB   04/21/2020
Scott Kerner   Judge

50-2020-CA-002208-XXXX-MB       04/21/2020
Scott Kerner
Judge

Furnished to all counsel of record:

Daniel A. Thomas, Esq., MRACHEK, FITZGERALD, ROSE, KONOPKA, THOMAS & WEISS, P.A., Counsel for Plaintiff, 505 South Flagler, Suite 600, West Palm Beach, Florida 33401-5945, dthomas@mrachek-law.com, esadowski@mrachek-law.com, hbranstrom@mrachek-law.com

Jason E. Rosen, Esq., KIM AND LAHEY LAW FIRM, LLC, Counsel for Defendant, 3620 Pelham Road, PMB #213, Greenville, South Carolina 29615, JRosen@kimandlahey.com

Page **2** of **2**

Filing # 107274719 E-Filed 05/10/2020 08:46:28 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION AJ

CASE NO: 50-2020-CA-002208-XXXX-MB

MATHIEU ROSINKSKY,

      Plaintiff,

v.

GEIGTECH EAST BAY, LLC d/b/a J GEIGER
a/k/a JGEIGER SHADING TECHNOLOGY,
a South Carolina limited liability company,

      Defendant.

_____/

## DEFENDANT GEIGTECH EAST BAY, LLC ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF MATHIEU ROSINSKY'S COMPLAINT AND COUNTERCLAIM

COMES NOW, Defendant, GEIGTECH EAST BAY, LLC d/b/A J GEIGER a/k/a JGEIGER SHADING TECHNOLOGY, a South Carolina limited liability company (hereinafter referred to as "Defendant" or "J | Geiger"), by and through its undersigned counsel, hereby submits its Answer and Affirmative Defenses to Plaintiff Mathieu Rosinsky's Complaint and Counterclaim, and states as follows:

### JURISDICTION, PARTIES, AND VENUE

1. Defendant denies paragraph 1 of the Complaint.

2. Defendant is without sufficient knowledge whether Plaintiff owns the residence located at 7 Lagomar Road, Palm Beach, Florida (the "Home"), therefore denies paragraph 2 of the Complaint.

Page **1** of **21**

3. Defendant admits that it is a limited liability company with its principal place of business in South Carolina and is registered to do business in Florida. Defendant admits that it installs and supplies shading systems. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 3 of the Complaint.

4. Defendant admits that Home is located in Palm Beach County, Florida. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 4 of the Complaint.

5. Defendant denies paragraph 5 of the Complaint.

## **GENERAL ALLEGATIONS**

6. Defendant admits that Plaintiff and Defendant entered into a written agreement in or about August 2017.  Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 6 of the Complaint.

7. Defendant admits that it provided the Plaintiff with a limited express warranty. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 7 of the Complaint.

8. Defendant admits that the Warranty referred to in paragraph 8 of the Complaint contains the quoted language. Defendant denies all remaining factual allegations and/or legal conclusions in Paragraph 8 of the Complaint.

9. Defendant admits paragraph 9 of the Complaint.

10. Defendant is without sufficient of the knowledge and therefore denies all factual allegations and/or legal conclusions in paragraph 10 and its subparts of the Complaint.

11. Defendant denies paragraph 11 of the Complaint.

12. Defendant denies paragraph 12 of the Complaint.

13. Defendant denies paragraph 13 of the Complaint.

## COUNT I – BREACH OF CONTRACT

14. Defendant restates and reallages the responses set forth in Paragraphs 1-13 as if fully set forth herein.

15. Defendant denies paragraph 15 of the Complaint.

16. The document speaks for itself. Defendant denies all factual allegations and/or legal conclusions in paragraph 16 of the Complaint.

17. Defendant denies paragraph 17 of the Complaint.

18. Defendant denies paragraph 18 and its subparts of the Complaint.

## COUNT I I– BREACH OF WARRANTY

19. Defendant restates and reallages the responses set forth in Paragraphs 1-13 as if fully set forth herein.

20. Defendant denies paragraph 20 of the Complaint.

21. The document speaks for itself. Defendant denies all factual allegations and/or legal conclusions in paragraph 21 of the Complaint.

22. Defendant denies paragraph 22 of the Complaint.

23. Defendant denies paragraph 23 of the Complaint.

24. Defendant denies paragraph 24 and its subparts of the Complaint.

## ANSWER TO ALL ALLEGATIONS

25. All other allegations not specifically admitted are hereby denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim on which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Defendant is not legally responsible for property that is not within its possession, custody or control.

## THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff has failed to institute this action within the time required under the applicable statute of limitations, his claims for relief are barred.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims must fail to the extent that Plaintiff has failed to mitigate his damages.

## FIFTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Contract in this action, Plaintiff contractually agreed that Defendant cannot be liable for any amount beyond the total amounts paid to J Geiger for the good and services sold pursuant to the Contract. See "Limitation of Liability" Exhibit A to the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Contract in this action, Plaintiff contractually agreed that Defendant cannot be liable "for any consequential, indirect, incidental, special, exemplary or punitive damages, lost profits or revenues or diminution in value, arising out of or relating to any breach of these terms, whether or not the possibility of such damages has been disclosed in advance by buyer or could have been reasonably foreseen by owner/agent, regardless of the legal or equitable theory (contract, tort, or otherwise) upon which the claim is based, and notwithstanding the failure of any agreed or other remedy of its essential purpose." See "Limitation of Liability" Exhibit A to the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant provided Plaintiff a one (1) year limited warranty evidenced in Exhibit B of Plaintiff's Complaint. Even if Plaintiff could state a claim for relief for Breach of Warranty, Plaintiff contractually agreed that Defendant is not liable for any alleged defects of the initial Product sold and installed or those repaired or replaced, beyond the limited one (1) year warranty. See Exhibit B to the Complaint ("Our Work" and "Warranty Extended to Repairs and Replacements").

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff, in a December 2018 writing, acknowledged the Product was in good working order and the Defendant cured any and all alleged defects.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff improperly maintained some or all of the Product which caused or contributed to the alleged damages.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff contractually agreed that Defendant is not liable for defects caused directly or indirectly by any of the listed exclusions. See Exhibit B ("Exclusions") to the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

Even if Plaintiff could state a claim for relief for Breach of Warranty in this action, Plaintiff contractually agreed that Defendant cannot be liable "for any consequential, incidental, exemplary or special damages (including, damages related to any personal injury, failure to meet any duty, including of good faith or reasonable care, negligence, or any other loss whatsoever), nor for any repair work undertaken without J Geiger's prior written consent, deinstallation, or inability to use the Shading. See Exhibit B ("Limitation of Liability") to the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

The exhibits attached to the Complaint negate the causes of action asserted because the documents attached as an exhibit control. *Fladell v. Palm Beach County Canvassing Bd.*, 772 So.2d 1240, 1242 (Fla. 2000).

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant has neither knowingly nor voluntarily waived any applicable affirmative defense(s) and reserves the right to assert and rely upon such other applicable affirmative defenses as may become available or apparent during discovery and investigation, as allowed by the Florida Rules of Civil Procedure.

## COUNTERCLAIM

Defendant GeigTech East Bay LLC ("J | Geiger") asserts these counterclaims against Plaintiff Mathieu Rosinsky. ("Plaintiff" or "Rosinsky") for infringement of U.S. Patent No. 10,415,307 B2 (Exhibit 1), J | Geiger alleges as follows:

## NATURE OF THE ACTION

1. This is an action or patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

2. Specifically, Rosinsky stated, through his attorney that "Starting on March 1, 2020, Owner [Rosinsky] is scheduled to begin removal and installation of a new shade system of like kind and quality, which will operate reliably and protect Owner's artwork. Enclosed is a copy of the proposal from Ask the Advisors, which is replacing the system."

3. A true and correct copy of the proposal mention in communication from Rosinsky and/or his agent dated January 27, 2020 is attached as Exhibit 2.

4. Defendant J | Geiger is a South Carolina limited liability company with a place of

business located at 7421 Industry Drive, North Charleston, South Carolina 29418.

5.      This Court has subject matter jurisdiction under at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

6.      Plaintiff is subject to this Court's specific and general personal jurisdiction due to his physical presence in this forum.

7.      Rosinsky's acts of infringement include using infringing products in the State of Florida and using these infringing products at his physical location in Florida.

8.      Based upon at least the above, Plaintiff has a regular and established place of residence in this District and committed the acts described herein in this District so that venue is proper in this judicial district under 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

9.      James Geiger, founder and president of GeigTech East Bay LLC (d/b/a J | Geiger Shading Technology), has been a pioneer and entrepreneur in the field of home integration for over 20 years.

10.     Mr. Geiger began his career in audio visual ("AV") technology as a sales representative for Video Concepts, Inc. and then an AV integrator in Charleston, South Carolina.

11.     AV integration involves the installation and coordination of various types of home electronic systems and technology, including window shades. Mr. Geiger first installed window shades as an integrator in 1999. In or around 2003, Mr. Geiger formed his own AV integration company HeAVi LLC, which grew into a very successful business.

12.     Traditionally, window shades were a design afterthought. As such, it was standard to conceal mounting hardware with a "ceiling pocket," "valance," or "fascia" as shown in the representative pictures below:

| | |
|---|---|
| "Ceiling Pocket": Perimeter system used to hide window shades in the ceiling. |  |
| "Valance": Decorative drapery hung above a window to screen the curtain fittings. |  |

| | |
|---|---|
| "Fascia": A wooden board or other piece of material used to conceal the roller shade from view. |  |

13. In or around 2011, while working on a project in a multi-million-dollar home, Mr. Geiger devised a new solution for the above described traditional methods of concealing screws, wires, and other hardware.

14. Mr. Geiger's concept involved exposed window roller shades ("roller shades") without any visible screws, wires, or other unsightly hardware.

15. This concept of exposed roller shades without unsightly hardware became known as the "J | Geiger Shading System."

16. In or around 2011, Mr. Geiger began working on his radical solution in his Charleston home where he first designed his unique exposed mounting hardware.

17. Mr. Geiger's new hardware was elegant and distinct from traditional methods of window dress.

18. Mr. Geiger's new hardware allowed for screws and wires to be concealed from view.

19.     Mr. Geiger realized that because of his revolutionary shade designs and enabling inventions, shading technology would cease to be an afterthought for designers and architects; instead, shading technology and design, using J | Geiger's Shading System, would become an integral part of home design.

20.     J | Geiger's pioneering signature look includes a circle and U-shaped brackets and floating couplers, which connect two shades together.

21.     In addition to this signature look and trade dress, the innovative J | Geiger patented shading mechanism conceals all of the "ugly parts" that would be exposed in a normal shade system.

22.     Mr. Geigers' design was not offered in other shading systems before.

23.     J | Geiger's invention, marketed to the consumer under the "J | Geiger" ornamental trade dress is now (and has been since shortly after its inception) widely recognized and praised by architects and designers throughout the United States and the world. J | Geiger's innovations to the shading industry have proven popular in the marketplace and the company's sales have consistently grown.

24.     This is illustrated by the following pictures, comparing traditional shading systems to J | Geiger's revolutionary, inventive, and ornamental designs of its jamb, center, and end brackets:

| Representative Lutron Jamb Brackets | J | Geiger's Jamb Bracket |
|---|---|
|  | |
| Representative Lutron Prior Center Brackets | J | Geiger's Center Bracket |
| | |
| Representative Prior End Brackets | J | Geiger's End Bracket |



25. In June 2012, Mr. Geiger published an advertisement in Dwell Magazine and immediately received hundreds of inquiries marveling at his elegant exposed roller shades. *See* Exhibit 3, p. 1.

26. With the full support of his wife and two boys, Mr. Geiger travelled the country to share his story of innovation and design and market the J. Geiger Shading System.

27. By August of 2014, J | Geiger opened offices in Los Angeles and Manhattan and caught the attention of the world's foremost designers and architects.

28. J | Geiger extensively marketed its pioneering shade system, spending approximately 1.2 million dollars during 2015-2017.

29. Representative examples of some of J | Geiger's advertising can be seen in Exhibits 3 and 4.

30. Further, the distributed providing the infringing goods to Rosinsky expressly

states that Rosinsky will use the infringement goods on Exhibit 2.

31.     From the inception of Mr. Geiger's advertising campaign in 2012 (see on page 1 of Exhibit 3), J. Geiger touted both the inventive functioning of the J | Geiger Shading System and the look of its brackets with its identifying trade dress.

32.     For example, as represented below, J | Geiger's trade dress is incorporated into the name and business information at the bottom of the Dwell ad, serving to expressly equate in the consumer's mind the company name "GeigTech" with the ornamental design trade dress of the J | Geiger products:



1-855-GeigTech    GeigTech LLC    646-588-0895
Empire State Building 350 Fifth Ave 59th Floor New York, NY 10118
www.GeigTech.com

33.     As is extensively demonstrated throughout the examples of J | Geiger advertising set forth in Exhibit 3 and 4, this "look for" type advertising has been a continuous and prominent part of all J | Geiger marketing since 2012.

34.     As J | Geiger's products have gained popularity, the products' unique appearance has proven to be desirable to consumers and has become inextricably linked with J | Geiger's reputation for quality, innovation, and elegance.

35.     J | Geiger's products popularity is evidenced in J. Geiger's year-over-year sales growth of 286% in 2015, 412% in 2016, and 50% in 2017.

36.     Upon information and belief, the Palladiom Shading System (discussed below) was introduced in September 2017, after J | Geiger's patent rights were initiated.

**PATENT-IN-SUIT**

37.     J | Geiger is the owner and the assignee of U.S. Patent No. 10,415,307 (the "'307 Patent"), issued on September 17, 2019 and entitled "ASSEMBLY FOR MOUNTING SHADES".

38.     J | Geiger holds the exclusive right to license the '307 Patent.

39.     J | Geiger has ownership of all substantial rights in the '307 Patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringement. A true and correct copy of the '307 Patent is attached hereto as Exhibit 1.

40.     The '307 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

41.     The '307 Patent is presumed valid under 35 USC § 282.

**ACCUSED PRODUCTS**

42.     Upon information and belief, and by his or his agent's own admission, Rosinsky has begun installing the Palladiom Shade System and its components on or about March 1, 2020. (See Exhibit 1).

43.     The Palladiom Shade System includes, but are not limited to end, brackets, center brackets, and jamb brackets.

44.     The Palladiom Shade System, and any of the Palladiom systems used by Rosinsky are collectively referred to herein as the "Accused Products".

45.     An example of one component of the Accused Products (the "Exemplary Component") of the Palladiom Shade System is shown below:



46. Upon information and belief, Rosinsky has purposefully and voluntarily placed the Accused Products into his residence with the full knowledge and expectation that these products will be used by him.

**47.** Upon information and belief, Plaintiff has received and continued to receive direct and indirect support concerning the Accused Products from Lutron or its distributors.

## INFRINGEMENT OF U.S. PATENT NO. 10,415,307

48. J | Geiger alleges and hereby incorporates by reference every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

49. In violation of 35 U.S.C. § 271, Plaintiff has directly infringed and continues to

4. directly infringe, both literally and/or under the doctrine of equivalents, the '307 Patent by at least using the Accused Products in the United States, including within this District, that infringe at least claim 1 of the '307 Patent without the authority of J | Geiger. **See Exhibit 5** (claim chart detailing each element of claim 1 as present in the Exemplary Component of the Lutron Palladiom System).

50. One or more components of the Lutron Palladiom System comprise a roller shade mounting element.

51. The Exemplary Component is a roller shade mounting element.

Page **15** of **21**

52. One or more components of the Lutron Palladiom System include a mount portion configured to couple to a support surface.

53. The Exemplary Component includes a mount portion configured to couple to a support surface.

54. One or more components of the Lutron Palladiom System includes a bracket portion configured to support a roller window shade assembly.

55. The Exemplary Component includes a bracket portion configured to support a roller window shade assembly.

56. One or more component of the Lutron Palladiom System a bracket portion comprising a first end and a second end substantially opposite the first end.

57. The Exemplary Component includes a bracket portion comprising a first end and a second end substantially opposite the first end.

58. One or more components of the Lutron Palladiom System includes a bracket portion comprising a first surface at the first end configured to bear against the support surface.

59. The Exemplary Component includes a bracket portion comprising a first surface at the first end configured to bear against the support surface.

60. One or more components of the Lutron Palladiom System includes a bracket portion comprising a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly.

61. The Exemplary Component includes a bracket portion comprising a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly.

62. One or more components of the Lutron Palladiom System includes a bracket

portion comprising a member coupled with the bracket portion, the member extending outward from the second surface, the member configured to engage the roller window shade assembly, and the member configured to limit rotation of at least a portion of the roller window shade assembly.

63.     The Exemplary Component includes a bracket portion comprising a member coupled with the bracket portion, the member extending outward from the second surface, the member configured to engage the roller window shade assembly, and the member configured to limit rotation of at least a portion of the roller window shade assembly.

64.     The combination of the bracket portion and the roller window shade assembly of the Lutron Palladiom System completely obscures at least a portion of the mount portion to an observer.

65.     The combination of the bracket portion and the roller window shade assembly of the Exemplary Component completely obscures at least a portion of the mount portion to an observer.

66.     The Palladiom shades that are to have been installed at the residence of Rosinsky (7 Lagomar Rd., Palm Beach, FL 33480) has a Project Name of LUTRON SHADES and PROJECT NO. LUTRON SHALDES-00001. (See Exhibit 2).

67.     The Lutron Palladiom System is a roller window shade mounting system that includes a roller shade mounting element as detailed herein and further illustrated in the claim chart of Exhibit 5.

68.     Accordingly, as explained in the previous paragraphs, Plaintiff has and continues

to directly infringe at least claim 1 of the '307 Patent, both literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by using into the United States the Accused Products without the authority of J | Geiger.

69.     Plaintiff has been on notice of the '307 Patent since at least February of 2020.

70.     In violation of 35 U.S.C. § 271(b), Plaintiff has indirectly infringed the '307 Patent by inducing distributors of Lutron to directly infringe the '307 Patent, both literally and/or under the doctrine of equivalents, at least: (1) by soliciting proposals from Lutron and/or its destructor for using the Accused Products, and (2) by causing Lutron and distributors to ,ake, use, offer for sale, sell and/or import in the United States the Accused Products, in each case, without the authority of J | Geiger.

71.     The Lutron Palladiom Shading System's installation instructions direct "factory trained and equipped installers" on how to install Palladiom Shades for customers and includes the following language.

## INTRODUCTION:

This guide is intended only for factory trained and equipped installers of Lutron's PALLADIOM Shades. The following instructions detail wiring, shade bracket mounting, chassis installation, and setup/operation at a site which has already been planned and prepared using the dedicated wall, ceiling or jamb installation templates according to the PALLADIOM Installation Planning and Template Guide.

72.     Upon information and belief, and in violation of 35 U.S.C. § 271(b), Plaintiff has indirectly infringed the '307 Patent by contribution knowing (1) that the Accused Products would be combined with other components to infringe the '307 Patent and (2) that the Accused Products have no substantial non-infringing use.

73.     Unless enjoined by this Court, Plaintiff will continue to infringe the '307 Patent.

74.     Because of Plaintiff's infringing activities, J | Geiger has suffered damages and

will continue to suffer damages in the future.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, J | Geiger demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

J | Geiger requests that this Court find in its favor and against Plaintiff, and that this Court grant J | Geiger the following relief:

A.      An adjudication that Plaintiff has infringed the '307 Patent;

B.      An award of damages to be paid by Plaintiff adequate to compensate J | Geiger for Plaintiff's infringement of the '307 Patent and any continuing or future infringement through the date such judgment is entered (but in no event not less than a reasonable royalty in accordance with 35 U.S.C. § 284), including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.      A preliminary and permanent injunction enjoining Plaintiff and his agents, servants, employees, users, attorneys, and all those persons in active concert or participation with Plaintiff from the acts described in this Complaint;

D.      An award of damages to be paid by Plaintiff adequate to compensate J | Geiger for J | Geiger's lost profits for Plaintiff's past infringement of the '307 Patent and any continuing or future infringement through the date such judgment is entered including interest, costs, expenses and an accounting of all infringing acts;

E.      Alternatively, an Order requiring Plaintiff to pay an ongoing royalty for any continued infringement after the date judgment is entered in an amount to be determined at trial;

F.      An award of pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

G.      A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of J | Geiger's reasonable attorneys' fees;

H.      A judgment that Plaintiff's wrongful activities were willful;

I.      An Order directing Plaintiff to recall all infringing products sold and/or distributed and to provide a full refund for all recalled infringing products;

J.      An Order directing the destruction of (i) all infringing products, including all recalled products, (ii) any other products that use a copy, reproduction, or colorable imitation of J | Geiger's trade dress in Plaintiff's possession or control, (iii) all molds, tooling, plates, and any other means of making the infringing products in Plaintiff's possession, custody, or control, and (iv) all advertising materials related to the infringing products in Plaintiff's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

K.      An award to J | Geiger of such further relief at law or in equity as the Court deems just and proper.

DATED this 10th day of May, 2020.

Respectfully submitted,

**KIM AND LAHEY LAW FIRM, LLC**

*s/ Jason E. Rosen*
Jason E. Rosen, Esq.
3620 Pelham Road, PMB # 213
Greenville, South Carolina 29615
Tel: 864.973.6688
Fax: 864.286.3282
Fla. Bar No.: 96118
Email: JRosen@kimandlahey.com

Page **20** of **21**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this 10th day of May, 2020 via the Florida Courts E-Filing Portal to counsel for Plaintiff, Daniel A. Thomas, Esq. at dthomas@mrachek-law.com and Erica Lester Sadowski, Esq. at esadowski@mrachek-law.com.

*s/ Jason E. Rosen*
JASON E. ROSEN

# EXHIBIT 1

US010415307B2

## (12) United States Patent
### Geiger

(10) **Patent No.:** **US 10,415,307 B2**
(45) **Date of Patent:** **Sep. 17, 2019**

(54) **ASSEMBLY FOR MOUNTING SHADES**

(71) Applicant: **GeigTech East Bay LLC**, Charleston, SC (US)

(72) Inventor: **James Geiger**, Charleston, SC (US)

(73) Assignee: **GeigTech East Bay LLC**, Charleston, SC (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **16/035,079**

(22) Filed: **Jul. 13, 2018**

(65) **Prior Publication Data**

US 2018/0320441 A1 Nov. 8, 2018

### Related U.S. Application Data

(63) Continuation of application No. 15/994,687, filed on May 31, 2018, which is a continuation of application No. 14/997,211, filed on Jan. 15, 2016, now Pat. No. 9,988,839, which is a continuation-in-part of application No. 14/401,453, filed as application No.
(Continued)

(51) **Int. Cl.**
*E06B 9/50* (2006.01)
*A47H 1/13* (2006.01)

(52) **U.S. Cl.**
CPC .......................... *E06B 9/50* (2013.01); *A47H 1/13* (2013.01)

(58) **Field of Classification Search**
CPC .................................... E06B 9/50; A47H 1/13
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,142,859 A | 8/1964 | Suska | |
| 3,333,555 A | 8/1967 | Kapnek | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CN | 2304326 Y | 1/1999 |
| CN | 2421910 | 3/2001 |

(Continued)

OTHER PUBLICATIONS

English translation of office action for corresponding Japanese Application No. 2015-512793, dated Feb. 22, 2017, 4 pps.
(Continued)

*Primary Examiner* — Anita M King
(74) *Attorney, Agent, or Firm* — Kim and Lahey Law Firm LLC; Douglas W. Kim

(57) **ABSTRACT**

A roller shade mounting element includes a mount portion configured to couple to a support surface and a bracket portion configured to support a roller window shade assembly. The bracket portion includes a first end and a second end substantially opposite the first end, a first surface at the first end configured to bear against the support surface, a second surface between the first end and the second end where the second surface is configured to extend adjacent an end of the roller window shade assembly, and a member coupled with the bracket portion. The member extends outward from the second surface, and the member is configured to engage and limit rotation of at least a portion of the roller window shade assembly. The combination of the bracket portion and the roller window shade assembly completely obscures at least a portion of the mount portion to an observer.

**19 Claims, 17 Drawing Sheets**



## US 10,415,307 B2

Page 2

### Related U.S. Application Data

PCT/US2013/041175 on May 15, 2013, now Pat. No. 9,237,821.

(60) Provisional application No. 61/647,445, filed on May 15, 2012.

### (56) References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,346,909 | A | 10/1967 | Blackburn |
| 3,710,530 | A | 1/1973 | Valtonen |
| 3,738,650 | A * | 6/1973 | Ossenkop .............. A63B 1/005 |
| | | | 248/264 |
| 4,023,235 | A | 5/1977 | Cohen et al. |
| 4,538,785 | A | 9/1985 | Damsgaard |
| 5,083,601 | A | 1/1992 | Tedeschi |
| 6,196,508 | B1 | 3/2001 | Nijs |
| 6,283,427 | B1 | 9/2001 | Møller et al. |
| 6,550,733 | B1 | 4/2003 | Lassen et al. |
| 7,267,311 | B2 | 9/2007 | Jung |
| D557,115 | S | 12/2007 | Zakowski |
| 7,380,582 | B1 | 6/2008 | Anderson et al. |
| 7,677,294 | B2 | 3/2010 | Bohlen |
| D669,771 | S | 10/2012 | Geiger |
| 8,695,253 | B2 | 4/2014 | Bednarksi |
| 8,800,634 | B2 | 8/2014 | Gramsch |
| D712,727 | S | 9/2014 | Geiger |
| 8,967,568 | B2 | 3/2015 | Wills et al. |
| 9,237,821 | B2 | 1/2016 | Geiger |
| 9,380,296 | B2 | 6/2016 | Hyun |
| 2003/0051830 | A1 | 3/2003 | Garcia Garcia |
| 2005/0183835 | A1 | 8/2005 | Nien |
| 2007/0056699 | A1 | 3/2007 | Liu |
| 2011/0024061 | A1 | 2/2011 | Bell et al. |
| 2011/0139382 | A1 | 6/2011 | Daniels |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| CN | 4241910 | Y | 3/2001 |
| EP | 1 806 472 | | 7/2007 |
| JP | 2581990 | U | 7/1998 |
| JP | 2002-536575 | A | 10/2002 |
| JP | 4005148 | B | 8/2007 |
| JP | 2009-531568 | A | 9/2009 |
| WO | WO 00/47585 | | 8/2000 |
| WO | WO-2007/110072 | A1 | 10/2007 |

#### OTHER PUBLICATIONS

Extended European Search Report for EP Application No. 13790000.7, dated Mar. 1, 2016, 7 pages.

International Search Report and Written Opinion regarding PCT/US2013/041175, dated Sep. 12, 2013, 9 pages.

SOMFY SAS, Sonesse(r) 30 RTS, Installation Manual, 2009 (13 pages).

SOMFY Systems, Inc., Motor Catalog, Dec. 2003, (78 pages).

HEAVi, LLC, Window Casing Shade mounts without Visible Fastners, 2010 (1 page).

International Search Report, PCT/US2018/049292, dated Oct. 3, 2018, (8 pages).

HEAVI, Invoice dated Jan. 18, 2010 (4 page).

HEAVI, Invoice dated Jan. 18, 2010 (1 page).

* cited by examiner

## FIG. 1



## FIG. 2



## FIG. 3



13

## FIG. 4A

## FIG. 4B

## FIG. 4C



47

46

431

430

## FIG. 5



## FIG. 6A

## FIG. 6B

## FIG. 6C

## FIG. 6D



## FIG. 7A



## FIG. 7B



## FIG. 7C



## FIG. 7D



**U.S. Patent**      Sep. 17, 2019      **Sheet 5 of 17**      **US 10,415,307 B2**

## FIG. 8

## FIG. 9



## FIG. 10



## FIG. 11





## FIG.13A



## FIG.13B   FIG.13C   FIG.13D   FIG.13E



## FIG. 14A



## FIG. 14B     FIG. 14C     FIG. 14D     FIG. 14E



## FIG. 15A



## FIG. 15B    FIG. 15C    FIG. 15D    FIG. 15E



# FIG. 16A



# FIG. 16B         FIG. 16C



## FIG. 17A



## FIG. 17B



## FIG. 17C



## FIG. 18A



## FIG. 18B



## FIG. 18C





FIG. 19A

FIG. 19B



FIG. 19C

# FIG. 20



## FIG. 21



# FIG. 22



# FIG. 23



US 10,415,307 B2

**1**

## ASSEMBLY FOR MOUNTING SHADES

### CROSS-REFERENCE TO RELATED APPLICATIONS

The present application is a continuation of U.S. patent application Ser. No. 15/994,687, filed on May 31, 2018, which is a continuation of U.S. patent application Ser. No. 14/997,211, filed on Jan. 15, 2016, now U.S. Pat. No. 9,988,839, which is a continuation-in-part of U.S. patent application Ser. No. 14/401,453, filed on May 15, 2013, now U.S. Pat. No. 9,237,821, which is a U.S. national stage of and claims priority to and the benefit of International Application No. PCT/US2013/041175, filed on May 15, 2013, which claims priority to and the benefit of U.S. Provisional Patent Application No. 61/647,445, filed on May 15, 2012, each of which are incorporated herein by reference in their entirety and for all purposes.

### FIELD

The present invention relates to fastening devices such as mounts, brackets, bracket assemblies, and mounting systems for the installation of motorized shades and shade systems.

### BACKGROUND

Current brackets and mounts for roller window shades and shade systems are typically bulky, visible, and may detract from the aesthetics of the shade system. Hence, there remains a need for improved assembly for mounting shades and shade systems, including motorized shades.

### SUMMARY

The present embodiments provide for a system of fastening devices, e.g., mounts, brackets, and assemblies for installing roller window shades. The roller shade mounting element can include a mount portion configured to couple to a support surface and a bracket portion configured to support a roller window shade assembly. The bracket portion can include a first end and a second end substantially opposite the first end; a first surface at the first end configured to bear against the support surface; a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly; and a member that can extending outward from the second surface, the member can be configured to engage the roller window shade assembly, and the member can be configured to limit rotation of at least a portion of the roller window shade assembly. The roller shade mounting system can include a first mount portion configured to couple to a support surface and a first bracket portion configured to support a first roller window shade assembly. The first bracket portion can include a first end and a second end substantially opposite the first end; a first surface at the first end configured to bear against the support surface; a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly and a member coupled with the first bracket portion. The member can extend outward from the second surface. The member can be configured to engage the first roller window shade assembly. The member can be configured to limit rotation of at least a portion of the first roller window shade assembly. The roller shade can include a second mount portion and a second bracket portion; and a third mount portion and a third bracket portion. The first

**2**

bracket portion and the first mount portion can be configured such that when the first mount portion is coupled to the support surface, the combination of the first bracket portion and the first window roller shade tube completely obscures a view of at least a portion of the first mount portion to an observer The first, second, and third bracket portions together can support at least the first roller window shade assembly and a second window roller shade assembly.

In one embodiment, the fastening device system comprises two one-piece, disk-shaped mounting brackets, one for each end of a shade tube, wherein the mounting brackets are configured such that, in use, the outer circumference of the brackets are visible; the mounting means being largely hidden within the bracket or by the shade. In a particular embodiment, the fastening system is designed for use with motorized shades, wherein one mounting bracket is configured to key the shade motor, and one mounting bracket is configured to receive the idler pin.

Another embodiment provides for a two-piece "invisible mount" fastening device comprising a mounting plate and a bracket, each configured to receive a means to secure the bracket to the mounting plate; and, optionally, a securing means. In use, the bracket surrounds the mounting plate, obscuring it from view. In one embodiment, the fastening device is configured to receive two ends of opposing shade tubes (i.e., a shade coupler). In another embodiment, the bracket is configured with a "key" projection. In yet another embodiment, the bracket is configured to receive an idler pin.

Yet another embodiment provides for a system for mounting at least two tube shades comprising the mounting bracket system (i.e., two disk-shaped mounting brackets) and at least one "invisible mount" two-piece shade coupler fastening device. In a particular embodiment, at least one of the shades is motorized.

Another embodiment provides for a system for mounting at least two tube shades, comprising at least three two-piece "invisible mount" fastening devices. In a particular embodiment, at least one of the shades is motorized and the system comprises a motor mount fastening device, a idler mount fastening device, and at least one shade coupler.

### DESCRIPTION OF THE DRAWINGS

FIG. **1** shows a view of an example fastening device having a mounting plate, a bracket, and a set screw. Dashed lines indicate the direction of screws used to secure the mounting plate to a flat surface (e.g., a window casing or wall).

FIG. **2** shows the example embodiment of FIG. **1**, with the bracket fitting over and around the mounting plate and the set screw inserted partially into the bracket.

FIG. **3** shows a view of the installed embodiment of FIG. **1**, wherein the outer circumference of the fastening device is visible, and the mounting plate is not visible, and the set screw is flush with the bracket.

FIGS. **4**A-C are three configurations of an embodiment of the bracket, mounting plate, and set screw embodiment, wherein the bracket is further configured as a Coupler, a Wall Mount Idler, or a Motor Wall Mount, respectively.

FIG. **5** presents a view of an alternative embodiment of the invention, in which the mounting plate slides into and is hidden within the bracket.

FIGS. **6**A-D show various views of a one-piece idler mount disk-shaped mounting bracket.

FIGS. **7**A-D show various views of a one-piece motor mount disk-shaped mounting bracket.

US 10,415,307 B2

3

FIG. **8** shows the mounting brackets of FIG. **6** and FIG. **7** in use on a shade, depicted by dashed lines.

FIG. **9** is a perspective view of an embodiment of the fastening device configured as a Coupler, installed with two tube shades. Note that the set screw is obscured by the shade, leaving a clean, simple bracket in view.

FIG. **10** is a perspective view of a one-piece idler mount disk-shaped mounting bracket installed with a tube shade.

FIG. **11** is a depiction of two tube shades assembled with the fastening devices of some embodiments of the present invention.

FIG. **12**A is a top view of an idler mount according to an embodiment.

FIGS. **12**B-C are side and plan views, respectively, of the idler mount of FIG. **12**A according to an embodiment.

FIGS. **12**D-E are side and plan views, respectively, of the idler mount of FIG. **12**A according to another embodiment.

FIG. **13**A is a top view of a motor mount according to an embodiment.

FIGS. **13**B-C are side and plan views, respectively, of the motor mount of FIG. **13**A according to an embodiment.

FIGS. **13**D-E are side and plan views, respectively, of the motor mount of FIG. **13**A according to another embodiment.

FIG. **14**A is a top view of a dual idler mount according to an embodiment.

FIGS. **14**B-C are side and plan views, respectively, of the dual idler mount of FIG. **14**A according to an embodiment.

FIGS. **14**D-E are side and plan views, respectively, of the dual idler mount of FIG. **14**A according to another embodiment.

FIG. **15**A is a top view of a dual motor mount according to an embodiment.

FIGS. **15**B-C are side and plan views, respectively, of the dual motor mount of FIG. **15**A according to an embodiment.

FIGS. **15**D-E are side and plan views, respectively, of the dual motor mount of FIG. **15**A according to another embodiment.

FIGS. **16**A-C are top, side and plan views, respectively, of a fastening device according to an embodiment.

FIGS. **17**A-C are top, side and plan views, respectively, of a dual idler mount according to an embodiment.

FIGS. **18**A-C are top, side and plan views, respectively, of a dual motor mount according to an embodiment.

FIGS. **19**A-C are top, side and plan views, respectively, of a fastening device according to an embodiment.

FIG. **20** is a perspective view of a fastening device having brackets position at a 90 degree angle with respect to each other according to an embodiment.

FIG. **21** is a perspective view of a bracket having an opening therethrough according to an embodiment.

FIG. **22** is a view of a fastening device including a bracket, a mount, a set screw, and two retaining screws, according to an example embodiment.

FIG. **23** is a view of the fastening device of FIG. **22** in an installed position with the bracket fitting over the mount and retaining screws, and the set screw inserted partially into the bracket.

DETAILED DESCRIPTION

The present invention is not limited to the particular methodology, protocols, and expression of design elements, etc., described herein and as such may vary. The terminology used herein is for the purpose of describing particular embodiments only, and is not intended to limit the scope of the present invention, which is defined solely by the claims.

4

As used herein and in the claims, the singular forms include the plural reference and vice versa unless the context clearly indicates otherwise. The term "or" is inclusive unless modified, for example, by "either." For brevity and clarity, a particular quantity of an item may be described or shown while the actual quantity of the item may differ. Other than in the operating examples, or where otherwise indicated, all numbers expressing measurements used herein should be understood as modified in all instances by the term "about," allowing for ranges accepted in the art.

All patents and other publications identified are expressly incorporated herein by reference for the purpose of describing and disclosing, for example, the methodologies described in such publications that might be used in connection with the present invention. These publications are provided solely for their disclosure prior to the filing date of the present application. Nothing in this regard should be construed as an admission that the inventors are not entitled to antedate such disclosure by virtue of prior invention or for any other reason. All statements as to the date or representation as to the contents of these documents is based on the information available to the applicants and does not constitute any admission as to the correctness of the dates or contents of these documents.

Unless defined otherwise, all technical terms used herein have the same meaning as those commonly understood to one of ordinary skill in the art to which this invention pertains. Although any known methods, devices, and materials may be used in the practice or testing of the invention, the methods, devices, and materials in this regard are described herein.

Embodiments of the present invention provide for improved means for mounting window shades (roller shades), including motorized shades, in which the portion of the mounting means (i.e., the "mount", "mounting plate", or "mounting bracket") affixed to the supporting structure (e.g., the window casing, walls, columns, etc.) are hidden from view by the structure of the bracket or mounting bracket. In some embodiments, the mounting bracket is a one-piece, disk-shaped device, having recessed apertures to receive means to secure the mounting plate, and further configured either to connect to the shade motor or clutch; or to hold a shade idler pin or pin. The disk-shape is selected for aesthetic reasons: to harmonize visually with the round nature of the shade tube, but other shapes of mounting plates are possible.

Another embodiment of the invention provides for a bracket, a mounting plate, and, optionally, a connecting means, whereby the bracket and mounting plate are configured such that, in use, the bracket fits over the mounting plate, being secured together by a connecting means, such that the mounting plate is hidden by the bracket. Optionally, the connecting means can be positioned on the body of the bracket at a location that will be hidden by the shade tube. The connecting means that secures the bracket to the mounting plate can comprise a pin and cam assembly, a set screw, a rod and spring, etc., as will be illustrated further by non-limiting embodiments herein.

The fastening devices of embodiments of the present invention can be made of any material suitable for being manufactured and capable of bearing the weight of shades, such as motorized shades. Such materials include metals, metal alloys, ceramics, plastics, and the like. The fastening devices can be manufactured by conventional processes.

Reference will now be made in detail to embodiments of the present invention, examples of which are illustrated in the accompanying drawings, wherein like reference numer-

US 10,415,307 B2

5

als refer to the like elements throughout. The embodiments are described below to explain the present invention by referring to the figures.

An example embodiment of a fastening device for securing roller window shades to the desired wall, window casing, and the like, is shown in FIG. 1. The embodiment includes a bracket (1), mounting plate (2) and a set screw (3). The mounting plate (2) has one side or end adapted to abut a flat surface, and a peg (6) projects from the opposite side. The mounting plate (2) also bears two apertures (5) through which fastening means (e.g., screws) can be inserted as indicated by the dashed lines to secure the mounting plate to a flat surface. The peg (6) bears a screw bore (7) that passes through the entire peg, and has an internally threaded surface for receiving the set screw. The bracket (1) is configured with an opening (8) to receive the mounting plate (2), and is configured to abut a flat surface. The bracket (1) also bears a screw bore (9) that passes through the entire body (i.e., width) of the bracket, for receiving the set screw. In the particular embodiment shown in FIG. 1, the bracket has an opening (10) for receiving one end of each of two opposing shade tubes, which tubes may interlock within the opening (10). The particular embodiment also has a bearing (11) within the opening (10), which allows the tubes to spin freely, minimizing friction and wear. Further regarding the bearing, this can be any appropriately sized commercially available bearing that, when the bracket is so configured, snaps into place. The bearing can be metal or ceramic, for example.

In use, the mounting plate (2) is secured to a flat surface using screws or other appropriate fastening means that are inserted through the apertures (5) in the mounting plate (2) in the direction indicated by the dashed lines of FIG. 1. Once this the mounting plate (2) is secured, the bracket (1) is inserted over the mounting plate (2), such that the flat surfaces (4, 12) align, and the screw bores (7, 9) align. A view of this is shown in FIG. 2, which also shows the set screw (3) partially inserted into the bracket (1) screw bore (9). Once the bracket (1) is in place, the set screw (3) is then secured through the bore holes (7, 9) of the bracket (1) and peg (6). Note that the end (12) of the bracket and the flat surface (4) of the mounting plate align to create a flat surface that will evenly abut a complementary flat surface. Also note that, in this embodiment, the outer dimensions of the mounting plate (2) fit in the interior of the receiving portion (8) of the bracket (1) in hand-in-glove fashion. The length of the set screw (3) is about equal to the width of the bracket (1), such that when fully inserted, the set screw (3) joins the peg (6) with both sides of the bracket (1). and the set screw (3) has no protruding surfaces. Moreover, in this particular embodiment, the screw bore (9) is placed close to the opening (10) for the tube, such that when the shade tubes are inserted into the fastening device, the screw bore is hidden from view by the shade. Once this fastening device is mounted on the flat surface, the outer circumference (13) is visible from the side view; the mounting plate (2) being obscured from view. A perspective view of the embodiment affixed to a horizontal, flat surface, is shown in FIG. 3, which demonstrates that the mounting plate (2) is no longer visible once the bracket (1) is in place and secured with the set screw (3). See also FIG. 9.

FIGS. 4A-4C present three embodiments of the fastening device, in which the brackets have been configured to serve as a Coupler (see FIGS. 1-3); or as a mount for the motor side of a motorized shade tube (Motor Wall Mount); or as a mount for the end of the tube opposite the motor (Wall Mount Idler). More specifically, the Motor Wall Mount

6

includes a "keying portion" or "key" (430) that, in use, provides a structure against which the motor can torque. The Wall Mount Idler has a hole (431) into which an idler pin can fit. The means connecting the bracket to the mounting plate in these embodiments comprises a rod (46) that projects into the bracket, the rod including a groove (47) that receives a set screw. Alternatively, the rod can be configured as a pin to receive a set screw configured as a cam (i.e., a pin and cam or "knock down" assembly).

FIG. 5 presents an alternative fastening device in which the bracket (51) slides over the mounting plate (52). More specifically, mounting plate (52) has two apertures (55) through which means are inserted to secure the mounting plate (52) to a flat surface. The mounting plate (52) is configured to have flanged portion (516) that fits the complementary base (517) of the bracket (51). Thus, in use, after the mounting plate (52) is secured to a flat surface, the bracket (51) slides over the mounting plate (52), and hides it from view. The bracket (51) is further secured by a fastening means inserted through the slot (518).

The fastening device comprising a bracket that covers the mounting plate provides an aesthetically pleasing mount, in that the means securing the bracket to the structure arc invisible. Moreover, this device can be secured to vertical or horizontal spaces, thus providing elegant flexibility in window shade installations.

Another embodiment of the invention provides for a fastening device system for securing a motorized shade, in which the mounting bracket for each end of the shade tube is a single piece rather than a mount and bracket assembly. More specifically, FIG. 6 shows views of an idler mount disk-shaped mounting bracket (620) having one side (621) configured to bear against a flat surface and one side having a projection (622) having a bore (623) configured to receive an idler pin. The idler mount (620) further comprises two apertures (655) through which fastening means (e.g., screws) are inserted to secure the flat surface of the idler mount (620) to the appropriate flat surface Wall, window casing, etc. The apertures (655) are configured (i.e., recessed) such that, in use, the means affixing the mount to the wall (or casing, etc.) are not visible. Hence, in use, the outer circumference (613) of the idler mount is visible. See also FIG. 10, FIG. 11.

The fastening device system of this embodiment further comprises a motor mount disk-shaped mounting bracket having one side configured to bear against a flat surface and one side having a projection configured as a key to engage the motor. See FIG. 10. More specifically, FIG. 7 shows views of a motor mount disk-shaped mounting bracket (720) having one side (721) configured to bear against a flat surface (e.g., a wall, window casing) and one side having a projection that provides a key (740) against which the shade motor can torque. The apertures (755) are configured (i.e., recessed) such that, in use, the means affixing the mount to the wall (or casing, etc.) are not visible. Hence, in use, the outer circumference (713) of the motor mount is visible. See also FIG. 11. This system is advantageous in window casings or between pillars, where the mounting bracket is secured to a vertical surface.

Another embodiment of the invention provides for another fastening device system for securing a motorized shade, in which the mounting bracket for each end of the shade tube is a single piece rather than a mount and bracket assembly. More specifically, FIGS. 12A-E show views of an idler mount (1220). In the embodiment shown in FIGS. 12B-C, the idler mount (1220) has one side (1221) configured to bear against a flat surface and one side having a

US 10,415,307 B2

7

projection (1222A) having a bore (1223) configured to receive an idler pin. In the embodiment shown in FIGS. 12D-E, the idler mount (1220) has two sides having projections (1222A) and (1222B) having bores (1223) configured to receive an idler pin. The idler mount (1220) further comprises an aperture (1255) through which fastening means (e.g., screws) may be inserted. In one embodiment, the aperture (1255) is recessed so that the fastening means are not visible.

The fastening device system of this embodiment can further comprise a motor mount. More specifically, FIGS. 13A-E show views of a motor mount (1320). In the embodiment shown in FIGS. 13B-C, the motor mount (1320) has one side (1321) configured to bear against a flat surface and one side having a projection (1322A) configured as a key to engage a motor. In the embodiment shown in FIGS. 13D-E, the motor mount (1320) has two sides having projections (1322A) and (1322B). The projections (1322A) and (1322B) provide keys against which shade motors can torque. Motor mount (1320) further comprises an aperture (1355) through which fastening means (e.g., screws) may be inserted. In one embodiment, aperture (1355) is recessed so that the fastening means are not visible.

According to one embodiment, dual idler mounts, motor mounts and/or mount and bracket assemblies can be provided for use with two shades. In addition, three or more shades can be fit with a single idler mount, motor mount and/or mount and bracket assembly constructed in a similar fashion as those shown and described above. FIGS. 14A-E and 17A-C show views of dual idler mounts. FIGS. 14A-E show views of an idler mount (1420) in a vertical configuration, while FIGS. 17A-C show views of an idler mount (1720) in a horizontal configuration. In the embodiment shown in FIGS. 14B-C, the idler mount (1420) has one side (1421) configured to bear against a flat surface and one side having two projections (1422A) and (1422B), each having a bore (1423) configured to receive an idler pin. In the embodiment shown in FIGS. 14D-E and 17B-C, the idler mount (1420) has two sides, each having two projections (1422A) and (1422B). Projections (1422A) and (1422B) each have a bore (1423) configured to receive and idler pin. The idler mounts (1420) and (1720) further comprise one or more apertures (1455) through which fastening means (e.g., screws) may be inserted. In one embodiment, the apertures (1455) are recessed so that the fastening means are not visible.

FIGS. 15A-E and 18A-C show views of dual motor mounts. FIGS. 15A-E shows views of a[n] motor mount (1520) in a vertical configuration, while FIGS. 18A-C show views of a motor mount (1820) in a horizontal configuration. In the embodiment shown in FIGS. 15B-C the motor mount (1520) has one side (1521) configured to bear against a flat surface (1521) and one side having projections (1540A) and (1540B) configured as keys to engage a motor. In the embodiment shown in FIG. 150-E, the motor mount (1520) has two sides having projections (1540A) and (1540B). The projections (1540A) and (1540B) provide keys against which shade motors can torque. Motor mounts (1520) and (1820) further comprise one or more apertures (1555) through which fastening means (e.g., screws) may be inserted. In one embodiment, apertures (1555) are recessed so the fastening means are not visible.

FIGS. 16A-C and 19A-C show views of dual mount and bracket assemblies for securing window shades to a desired surface. FIGS. 16A-C show views of a mount and bracket assembly (1620) in a vertical configuration, while FIGS. 19A-C show views of a mount and bracket assembly (1920)

8

in a horizontal configuration. Assemblies (1620) and (1920) include brackets (1601) and (1901), respectively, and mounting plates (not shown) within brackets (1601) and (1901) similar to mounting plate 2 of FIG. 1. Brackets (1601) and (1901) are configured with openings to receive the mounting plates, and are configured to abut a flat surface. Brackets (1601) and (1901) bear one or more screw bores (1609) that pass through the entire body (i.e., width) of the bracket, for receiving a set screw through a corresponding screw bore in the mounting plate. Brackets (1601) and (1901) have openings (1610) for receiving one end of each of two opposing shade tubes, which tubes may interlock within the opening (1610). Each opening (1610) has a bearing (1611), which allows the tubes to spin freely, minimizing friction and wear.

FIG. 20 is a perspective view of still another dual mount and bracket assembly for securing window shades to a desired surface. In this embodiment, assembly (2020) comprises brackets (2001A) and (2001B), which are formed at a 90 degree angle with respect to each other for positioning in a corner, for example. Assembly (2020) further comprises mounting plates (not shown) within each of brackets (2001A) and (2001B), in a similar fashion as is shown and described with respect to mounting plate 2 of FIG. 1. Brackets (2001A) and (2001B) are configured with openings to receive the mounting plates, and are configured to abut a flat surface (2021). Brackets (2001A) and (2001B) each bear a screw bore (2009) that passes through the entire body (i.e., width) of the bracket, for receiving a set screw through a corresponding screw bore in the mounting plate. Brackets (2001A) and (2001B) each have an opening (2010) for receiving one end of a shade tube. The shade tube may interlock within the openings (2010). Each opening (2010) has a bearing (2011), which allows the tube to spin freely, minimizing friction.

FIG. 21 is a perspective view of a bracket (2100) having an opening therethrough according to an embodiment. In some embodiments, the bracket (2100) can have an opening (2110) for a wiring (2120), and the opening (2110) can extend from a side (2130) of the bracket (2100) adapted to bear against a flat surface (such as a wall, not illustrated) to an area (2140) of the bracket adjacent to the roller window shade (not illustrated) to permit the wiring (2120) to pass from the flat surface through the opening in the bracket (2100) and to the roller window shade. As such, the bracket (2100) obscures the view of the wiring (2120). The wiring can, in some embodiments, be used to supply power to a motor for use with the roller window shade. The opening in the bracket for the wiring is not limited to the configuration shown in FIG. 21, and can be provided in any bracket for mounting a window shade.

Referring now to FIG. 22, a view of a fastening device including a bracket (2200), a mount (2220), a set screw (2203), a first retaining screw (2204) and a second retaining screw (2204) is shown according to an example embodiment. The mount (2220) may be a fastener (e.g., such as a bolt) that can be secured to a surface (e.g., such as a wall, ceiling, cabinetry). For example, the mount (2220) may be a threaded rod where a portion of the rod or all of the rod is threaded, a threaded sleeve with a set screw, and so on. The mount (2220) may be any type of fastener configured to be secured to any type of surface, including wood, metal, ceramic, drywall, brick, concrete, and other surface types. In some embodiments, as shown in FIG. 22, the mount (2220) includes a protrusion (2221) having a bore (2207) and a threaded portion (2222). For example, the mount (2220) may be fastened to a surface by screwing the threaded

US 10,415,307 B2

9

portion (**2222**) into the surface. In some embodiments, the mount (**2220**) does not include the threaded portion (**2222**) and is secured to a surface by another method (e.g., glue, welding). When the threaded portion (**2222**) is secured to a surface, one end of the protrusion (**2221**) may abut the surface such that the protrusion (**2221**) remains protruding from the surface. The bracket (**2200**) includes a first aperture (**2206**), a second aperture (**2208**), and a third aperture (**2205**).

As shown in FIG. **23**, when the fastening device is in an installed position, the first aperture (**2206**) receives the first retaining screw (**2204**), the second aperture (**2208**) receives the second retaining screw (**2204**), and the third aperture (**2205**) receives the protrusion (**2221**) of the mount (**2220**) so that the bore (**2207**) of the mount (**2220**) aligns with a bore (**2209**) of the bracket (**2200**). When the bores (**2207**, **2209**) align, the set screw (**2203**) may be inserted into the bores (**2207**, **2209**) to removably secure the bracket (**2200**) to the mount (**2220**). The length of the set screw (**2203**) may be about equal to the width of the bracket (**2200**), such that when fully inserted, the set screw (**2203**) joins the protrusion (**2220**) with both sides of the bracket (**2200**) and the set screw (**2203**) has no protruding surfaces. The bracket (**2220**) has an end (**2212**) configured to abut the installation surface. As shown in FIGS. **22** and **23**, the end (**2212**) is shown as being flat for abutting a flat or substantially flat surface, though it will be appreciated that the end (**2212**) may be shaped to fit an installation surface having any type of shape. Once the bracket (**2200**) is installed, an outer circumference (**2213**) of the bracket (**2200**) may be visible to an observer from a side view, but the mount (**2220**) is obscured by the bracket (**2200**). In the particular embodiment shown in FIG. **22**, the bracket has an opening (**2210**) for receiving one end of each of two opposing shade tubes, though other types of shade tube connectors may be used. The shade tubes may interlock within the opening (**2210**). The particular embodiment shown also has a bearing (**2211**) within the opening (**2210**), which allows the tubes to spin freely, thereby minimizing friction and wear.

A further embodiment of the present invention provides for a fastening device system comprising the single-piece, disk shaped idler and motor mounts and the fastening device comprising the mounting plate and bracket. As shown in FIG. **11**, this system is useful when using two shade tubes, with the motor mount and idler mount at the outer ends of the two shades, and the fastening device configured as a coupler in between, maintain the connection of the two shades in communication with the motor. This embodiment can be adapted to secure a number of shades, by using the required number of coupler fastening devices.

In use, low voltage wiring is done behind the motor mounting bracket or motor bracket/mounting plate fastening device. A wire is brought through the window casing (or appropriate structure), then the mount or bracket located adjacent to the wire. The wire is strung to behind the far (hidden) corner of the bracket and connections made behind the bracket such that the wiring is covered by the bracket.

The fastening devices and systems of the present embodiments are also suitable for use with non-motorized window shades; the particular embodiment selected to complement the structure at the ends of the non-motorized shade tubes.

When the disk-shaped mounting brackets are installed in a window casing, there is little room for error because the disk is relatively thin. Hence, installers can use mock shade tubes to perfect the installation, then order shades to match the tube length. Once the shades arrive, the mock tubes are

10

removed from the motor, the motor and idler are installed in the shade, and the installation completed.

What is claimed is:

1. A roller shade mounting element, comprising:
   a mount portion configured to couple to a support surface;
   a bracket portion configured to support a roller window shade assembly, the bracket portion comprising:
      a first end and a second end substantially opposite the first end;
      a first surface at the first end configured to bear against the support surface;
      a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly; and
      a member coupled with the bracket portion, the member extending outward from the second surface, the member configured to engage the roller window shade assembly, and the member configured to limit rotation of at least a portion of the roller window shade assembly;
   wherein the combination of the bracket portion and the roller window shade assembly completely obscures at least a portion of the mount portion to an observer.

2. The roller shade mounting element of claim **1**, wherein the first surface of the bracket portion is a first flat support surface, wherein the mount portion comprises a second flat support surface configured to bear against the support surface, and wherein the first flat support surface and the second flat support surface are coplanar when the roller shade mounting element is installed.

3. The roller shade mounting element of claim **2**, wherein the mount portion comprises at least two apertures, and wherein each aperture is configured to receive a fastener to couple the mount portion to the support surface.

4. The roller shade mounting element of claim **3**, wherein the bracket portion further defines a third surface at the second end, and wherein the third surface is rounded.

5. The roller shade mounting element of claim **4**, wherein the second surface extends perpendicular to the first surface.

6. The roller shade mounting element of claim **1**, wherein the member comprises a key.

7. The roller shade mounting element of claim **1**, wherein the member comprises a protrusion.

8. A roller shade mounting system, comprising:
   a first mount portion configured to couple to a support surface;
   a first bracket portion configured to support a first roller window shade assembly, the first bracket portion comprising:
      a first end and a second end substantially opposite the first end;
      a first surface at the first end configured to bear against the support surface;
      a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly;
      a member coupled with the first bracket portion, the member extending outward from the second surface, the member configured to engage the first roller window shade assembly, and the member configured to limit rotation of at least a portion of the first roller window shade assembly;
   a second mount portion and a second bracket portion; and
   a third mount portion and a third bracket portion;
   wherein the first bracket portion and the first mount portion are configured such that when the first mount

US 10,415,307 B2

11

portion is coupled to the support surface, the combination of the first bracket portion and the first window roller shade tube completely obscures a view of at least a portion of the first mount portion to an observer, and wherein the first, second, and third bracket portions together support at least the first roller window shade assembly and a second window roller shade assembly.

9. The roller shade mounting system of claim 8, wherein the first member comprises at least one of a key and a protrusion.

10. The roller shade mounting system of claim 8, wherein the member is a first member, the bracket further comprising a second member;

wherein the first bracket portion further defines a third surface extending between the first end and the second end and positioned opposite the second surface, and wherein the second surface is configured to extend adjacent an end of the second roller window shade assembly;

wherein the second member is coupled with the first bracket portion, wherein the second member extends outward from the third surface of the first bracket portion, wherein the second member is configured to engage the second roller window shade assembly, and wherein the second member is configured to limit rotation of at least a portion of the second roller window shade assembly.

11. The roller shade mounting system of claim 10, wherein at least one of the first member and the second member comprises at least one of a key and a protrusion.

12. The roller shade mounting system of claim 10, wherein the first surface of the first bracket portion is a first flat support surface, wherein the first mount portion defines a second flat support surface configured to bear against the support surface, and wherein the first flat support surface and the second flat support surface are coplanar when the roller shade mounting system is installed.

13. The roller shade mounting system of claim 12, wherein the first mount portion defines at least two apertures, and wherein each aperture is configured to receive a fastener to couple the first mount portion to the support surface.

14. The roller shade mounting system of claim 13, wherein the first bracket portion further defines a fourth surface at the second end, and wherein the fourth surface is rounded.

12

15. The roller shade mounting system of claim 14, wherein the second surface and the third surface each extend substantially perpendicular to the first surface.

16. A system for mounting a roller window shade assembly, comprising:

two roller shade mounting elements, each mounting element comprising:

a first surface configured to bear against a flat support surface; and

a second surface substantially opposite the first surface; and

a member extending outward from the second surface and configured to support an end of the roller window shade assembly;

wherein each of the mounting elements are configured to be secured to the corresponding flat support surface such that the first surfaces of the mounting elements bear against the corresponding flat support surface;

wherein the member of at least one of the mounting elements is configured to engage the roller window shade assembly to prevent rotation of at least a portion of the roller window shade assembly; and

wherein the roller window shade assembly completely obscures at least a portion of the second surface to an observer.

17. The system of claim 16, wherein the mounting elements are disk-shaped, and wherein, when holding the roller window shade assembly, the outer circumference of each disk-shaped mounting element is visible.

18. The system of claim 16, wherein each of the mounting elements have at least two apertures extending therethrough, each aperture configured to receive a corresponding fastener to secure the corresponding mounting element to the flat support surface, and wherein, when holding the roller window shade assembly, the fasteners are at least partially obscured by the roller window shade assembly.

19. The system of claim 16, wherein the member of the at least one of the mounting elements is configured to engage a tube shade clutch or a tube shade motor of the roller window shade assembly to prevent rotation of at least a portion of the tube shade clutch or the tube shade motor.

* * * * *

# EXHIBIT 2



**MRACHEK
FITZGERALD
ROSE
KONOPKA
THOMAS
& WEISS, P.A.**

Writer's Direct Dial:  (561) 472-2406
Writer's Email Address:  dthomas@mrachek-law.com

January 27, 2020

**VIA CERTIFIED MAIL AND EMAIL (agustafson@j-geiger.com)**
J. Geiger Shading Technology J("J Geiger")
c/o Alex Gustafson
4101 Ravenswood Rd
Fort Lauderdale, FL 33312

**Re:  7 Lagomar Rd, Palm Beach, FL 33480 (the "Project ")**

Dear Mr. Gustafson:

My law firm represents Mathieu Rosinsky, the owner of the Project ("Owner").

Owner has retained my law firm because the interior shades for the Project, which were supplied and installed by J Geiger, are a failure.  They are completely unreliable and several of your employee have knowledge of the repeated and persistent failures because J Geiger has been out to the Project many, many times to repair the system, to no avail.  So, despite your good faith provision of manpower and your desire to make the necessary repairs (and the Owner's cooperation), J Geiger has been unsuccessful in its attempts to finally resolve the problem.

Since the inception, you have known that Owner has and maintains an extensive artwork collection, and that the density, location, quality and reliability of the J Geiger shades and operation were critical for the protection and preservation of that artwork; which is situated throughout the Project.  In fact, at numerous times, Owner has had to express his frustration to J Geiger that he has to leave shades down at all times for fear that the shades will not go down at the necessary time or operate correctly to protect the artwork.  Simply put, neither party nor the architect for the Project reasonably contemplated Owner would have to live in a darkened house in order to protect his artwork from damaging sunlight when he paid J Geiger approximately $180,000 for the installation of reliable, electronic shades throughout the Project.

The shades have persistently and repeatedly failed, and J Geiger has had numerous unsuccessful opportunities to cure what appear to be a combination of both product and installation defects.  Meanwhile, Owner has been patiently awaiting a complete and final solution to these problems since January 2018 (i.e., for two years now).  In short, the parties cannot reasonably differ on whether the current system is unworkable and must be replaced.

Starting on March 1, 2020, Owner is scheduled to begin removal and installation of a new shade system of like kind and quality, which will operate reliably and protect Owner's artwork. Enclosed is a copy of the proposal from Ask the Advisors, which is replacing the system. Owner will have an Owner's representative or contractor oversee the replacement and handle the permitting needs (we expect to negotiate a 15% fee), along with attendant trade costs (unknown, but billed on a time and materials basis) for drywall and finish repairs at each shade location.   While Owner has been unable to secure a guaranteed maximum price for the replacement and repairs, the Owner has sufficient notice of the expected replacement costs to make the following demand to J Geiger:

*In exchange for a full refund, Owner will execute a mutual general release with J Geiger and its principals, insurers and referrals, waiving all claims, damages, warranties, attorneys' fees and expenses.*

While Owner appreciates the good faith efforts by J Geiger to repair the flawed shade system, those efforts have failed and Owner cannot leave the artwork unprotected or endlessly live in a darkened home.   For example, Owner has tens of photographs and videos showing the failures of the system and its unreliability.   Nevertheless, Owner is interested in closing this chapter and moving on.

Please advise by close of business on February 11, 2020, if J Geiger accepts this settlement demand.   Otherwise, Owner has directed my office to prepare a lawsuit seeking recovery of his damages through the court system.

Sincerely,

*/s/ Daniel A. Thomas*

Daniel A. Thomas
DAT/hab

Enclosures

cc:  Mr. Roger Janssen AIA



# Proposal



## Lutron Shades

Mathieu Rosinsky
7 Lagomar Rd.
Palm Beach, FL 33480

Media Room

**Presented By:**

## Ask The Advisors

| 2271 A Palm Beach Lakes Blvd<br>West Palm Beach, Fl 33409 | 561-478-3100<br>www.AskTheAdvisors.com | Licensed Contractor #<br>EC13007065 |
| --- | --- | --- |

System Designer:

Jeff Miller

| Modified: | 12/27/2019 |
| --- | --- |
| Revision: | 1 |

## Great Room

| | | | |
|---|---|---|---:|
| 1 | **Lutron Palladiom S-3**<br>S-3 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,335.00 |
| 1 | **Lutron Palladiom S-4**<br>S-4 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,335.00 |
| 1 | **Lutron Palladiom S-1**<br>S-1 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,275.00 |
| 1 | **Lutron Palladiom S-2**<br>S-2 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,275.00 |
| 4 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

| | | |
|---|---|---:|
| **Great Room** | **Sub Total:** | **$5,220.00** |

## Dining Room

| | | | |
|---|---|---|---:|
| 1 | **Lutron Palladiom S-8**<br>S-8 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,575.00 |
| 1 | **Lutron Palladiom S-5**<br>S-5 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,250.00 |
| 1 | **Lutron Palladiom S-6**<br>S-6 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,250.00 |
| 1 | **Lutron Palladiom S-7**<br>S-7 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,200.00 |
| 1 | **Lutron Palladiom S-9**<br>S-9 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,200.00 |
| 5 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

| | | |
|---|---|---:|
| **Dining Room** | **Sub Total:** | **$6,475.00** |

## Gallery

| | | | |
|---|---|---|---:|
| 1 | **Lutron Palladiom S-11**<br>S-11 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,000.00 |
| 1 | **Lutron Palladiom S-10**<br>S-10 Sivoia QS Palladiom QS Wired,  Fabric TBD | | $1,000.00 |
| 2 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

| | | |
|---|---|---:|
| **Gallery** | **Sub Total:** | **$2,000.00** |

## Living Room

| Qty | Item | Price |
|---|---|---|
| 1 | **Lutron Palladiom S-13**<br>S-13 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,575.00 |
| 1 | **Lutron Palladiom S-16**<br>S-16 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,320.00 |
| 1 | **Lutron Palladiom S-15**<br>S-15 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,230.00 |
| 1 | **Lutron Palladiom S-17**<br>S-17 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,230.00 |
| 1 | **Lutron Palladiom S-12**<br>S-12 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,200.00 |
| 1 | **Lutron Palladiom S-14**<br>S-14 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,200.00 |
| 6 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

**Living Room Sub Total: $7,755.00**

## Boat House Bed

| Qty | Item | Price |
|---|---|---|
| 1 | **Lutron Palladiom S-19L**<br>S-19 L Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,712.00 |
| 1 | **Lutron Palladiom S-19R**<br>S-19 R Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,712.00 |
| 1 | **Lutron Palladiom S-18L**<br>S-18 L Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,568.00 |
| 1 | **Lutron Palladiom S-18R**<br>S-18 R Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,568.00 |
| 1 | **Lutron Palladiom S-20**<br>S-20 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,542.00 |
| 5 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

**Boat House Bed Sub Total: $8,102.00**

## Stairs

| Qty | Item | Price |
|---|---|---|
| 1 | **Lutron Palladiom S-21**<br>S-21 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,090.00 |
| 1 | **Lutron Palladiom S-22**<br>S-22 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,090.00 |
| 1 | **Lutron Palladiom S-23**<br>S-23 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,090.00 |
| 3 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

**Stairs Sub Total: $3,270.00**

## Guest Bed/ Media Room

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-24**<br>S-24 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,165.00 |
| 1 | **Lutron Palladiom S-25**<br>S-25 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,162.00 |
| 1 | **Lutron Palladiom S-26**<br>S-26 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,165.00 |
| 3 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

|  | Guest Bed/ Media Room | Sub Total: | **$3,492.00** |

## Guest Bath

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-27**<br>S-27 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,000.00 |
| 1 | **Lutron Palladiom S-28**<br>S-28 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,000.00 |
| 2 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

|  | Guest Bath | Sub Total: | **$2,000.00** |

## Office Bath

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-29**<br>S-29 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,000.00 |
| 1 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

|  | Office Bath | Sub Total: | **$1,000.00** |

## Office Dressing

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-30**<br>S-30 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,020.00 |
| 1 | **Lutron Palladiom S-31**<br>S-31 Sivoia QS Palladiom QS Wired,  Fabric TBD | $1,020.00 |
| 2 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

|  | Office Dressing | Sub Total: | **$2,040.00** |

## WC

| | | |
|---|---|---|
| 1 | **Lutron Palladiom**<br>S-32 Sivoia QS Palladiom QS Wired,  Fabric TBD | $995.00 |
| 1 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

|  | WC | Sub Total: | **$995.00** |

## Master Bedroom South

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-34L**<br>S-34 L Sivoia QS Palladiom QS Wired, Fabric TBD | $1,310.00 |
| 1 | **Lutron Palladiom S-34R**<br>S-34 R Sivoia QS Palladiom QS Wired, Fabric TBD | $1,310.00 |
| 1 | **Lutron Palladiom S-33**<br>S-33 Sivoia QS Palladiom QS Wired, Fabric TBD | $1,105.00 |
| 3 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

| Master Bedroom South | Sub Total: | $3,725.00 |
|---|---|---|

## Gallery 3

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-36C**<br>S-36C Sivoia QS Palladiom QS Wired, Fabric TBD | $1,423.00 |
| 1 | **Lutron Palladiom S-36L**<br>S-36L Sivoia QS Palladiom QS Wired, Fabric TBD | $1,158.00 |
| 1 | **Lutron Palladiom S-36R**<br>S-36 R Sivoia QS Palladiom QS Wired, Fabric TBD | $1,157.00 |
| 1 | **Lutron Palladiom S-35**<br>S-35 Sivoia QS Palladiom QS Wired, Fabric TBD | $1,107.00 |
| 4 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

| Gallery 3 | Sub Total: | $4,845.00 |
|---|---|---|

## Gallery 2

| | | |
|---|---|---|
| 1 | **Lutron Palladiom S-37**<br>S-37 Sivoia QS Palladiom QS Wired, Fabric TBD | $1,088.00 |
| 1 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | |

| Gallery 2 | Sub Total: | $1,088.00 |
|---|---|---|

## Breakfast Bar

| | | | |
|---|---|---|---|
| 1 | **Lutron Palladiom S-38**<br>S-38 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,150.00 |
| 1 | **Lutron Palladiom S-40**<br>S-40 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,130.00 |
| 1 | **Lutron Palladiom S-41**<br>S-41 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,130.00 |
| 1 | **Lutron Palladiom S-42**<br>S-42 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,130.00 |
| 1 | **Lutron Palladiom S-43**<br>S-43 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,130.00 |
| 1 | **Lutron Palladiom S-39**<br>S-39 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $960.00 |
| 6 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

|  |  |  |
|---|---|---|
| **Breakfast Bar** | **Sub Total:** | **$6,630.00** |

## Master Bed North

| | | | |
|---|---|---|---|
| 1 | **Lutron Palladiom S-45L**<br>S-45 L Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,600.00 |
| 1 | **Lutron Palladiom S-45R**<br>S-45 R Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,600.00 |
| 1 | **Lutron Palladiom S-44**<br>S-44 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,165.00 |
| 3 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

|  |  |  |
|---|---|---|
| **Master Bed North** | **Sub Total:** | **$4,365.00** |

## Master Closet

| | | | |
|---|---|---|---|
| 1 | **Lutron Palladiom S-46**<br>S-46 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,000.00 |
| 1 | **Lutron Palladiom S-47**<br>S-47 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,000.00 |
| 1 | **Lutron Palladiom S-48**<br>S-48 Sivoia QS Palladiom QS Wired,   Fabric TBD | | $1,000.00 |
| 3 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | |

|  |  |  |
|---|---|---|
| **Master Closet** | **Sub Total:** | **$3,000.00** |

### Master WC

| | | | | |
|---|---|---|---|---|
| 1 | **Lutron Palladiom S-XX**<br>S-XX Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $1,002.00 |
| 1 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | | |

| | Master WC | Sub Total: | $1,002.00 |
|---|---|---|---|

### Gym

| | | | | |
|---|---|---|---|---|
| 1 | **Lutron Palladiom S-51**<br>S-51  Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $2,386.00 |
| 1 | **Lutron Palladiom S-52**<br>S-52  Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $2,380.00 |
| 1 | **Lutron Palladiom S-50L**<br>S-50 L N. Slider  Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $1,958.00 |
| 1 | **Lutron Palladiom S-50R**<br>S-50 R N. Slider  Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $1,958.00 |
| 1 | **Lutron Palladiom S-49**<br>S-49 Door Sivoia QS Palladiom QS Wired,   Fabric TBD | | | $1,480.00 |
| 5 | **A T A Shade Prewire**<br>1 - 18/2pr Lutron Wire | | | |

| | Gym | Sub Total: | $10,162.00 |
|---|---|---|---|

### Equipment Closet

| | | | | |
|---|---|---|---|---|
| 6 | **Lutron QSPS-10PNL**<br>QS 10 OUTPUT PS 35V | | | $9,000.00 |
| 1 | **Lutron HQP6-1**<br>HomeWorks QS 1-Link processor | | | $625.00 |

| | Equipment Closet | Sub Total: | $9,625.00 |
|---|---|---|---|

### Cable & Hardware

| | Total Cable & Hardware: | $4,223.00 |
|---|---|---|

## Project Summary

|  |  |
|---|---|
| **Equipment:** | **$91,014.00** |
| **Rough-In Estimated:** | **$36,240.00** |
| **Trim Estimated:** | **$1,275.00** |
| **Finish Estimated:** | **$40,875.00** |
| **Programming Estimated:** | **$1,540.00** |
| **Design/Engineering Estimated:** | **$1,890.00** |
| **Project Management Estimated:** | **$2,320.00** |
| **Sales Tax:** | **$10,509.24** |
| **PBC Surcharge:** | **$50.00** |
| **Estimated Grand Total:** | **$185,713.24** |

# EXHIBIT 3

# Clean House?

GeigTech™ "Resolution™" Series Shades eliminate the need to hide your roller shades.  The clean lines of your room's design will not be broken.  GeigTech™ Shades are designed to mount inside your window casing, and remain exposed in a perfect world where form meets function.  We offer manual, motorized and battery powered shades. GeigTech™ shade motors are almost silent, yet they can power shades with lengths over 8' using our attractive "Resolver™" coupler.  GeigTech™ motorized shades can be operated with a smartphone, keypad, switch, or wireless remote control.  Customization is available to ensure perfect synergy with your environment. Clean House by contacting GeigTech™ today.

**No Valances-No Fascias-No Ceiling Pockets-No Visible Screws-No Stress**



**GeigTech™**

1-855-GeigTech    GeigTech LLC    646-588-0895
Empire State Building 350 Fifth Ave 59th Floor New York, NY 10118
www.GeigTech.com

**2012 - Dwell - Original GeigTech Print Ad**



**2015 - Pacific Design Center Newsletter**



## OUR TEAM WELCOMES YOU TO ENJOY A SNEAK PEEK OF OUR LA SHOWROOM AT THE PACIFIC DESIGN CENTER FALL MARKET EVENT

*Celebrate our opening with James Geiger, Founder and President during the 2015 Fall Market in Suite B112.*

Thursday, Oct. 8
10 a.m. to 6:30 p.m.
3:30 p.m. to 6:30 p.m. Cocktails with James Geiger

Pacific Design Center
8687 Melrose Ave.
West Hollywood, CA 90069
JGeiger Shading PDC Showroom: Suite, B112

**CLICK TO RSVP**
1-844-543-4437



Located in the award-winning Pacific Design Center, JGeiger Shading Technology's new LA showroom is approximately 2,600 sq. feet, and provides a phenomenal space for clients to see and experience our fascia-free shading systems, and our new product launches. Appointments can be made with a design consultant or walk-ins can see demonstrations of our product.

www.jgeigershading.com

**2015 - Dwell Digital - e-invite for Pacific Design Center event**

Thank you to all who came out to the Pacific Design Center's Fall
Market event and the Grand Opening of our new Showroom.

If you were unable to make it, we welcome you to come by anytime.

Visit Our Showroom





## OUR OPEN HOUSE WAS SUCCESSFUL AND IT WAS GREAT TO MEET ALL OF YOU.

*For those who were unable to attend, we invite you to visit us anytime to experience our fascia-free shading technology – now available in invisible ceiling pockets.*

VISIT OUR SHOWROOM







# NOTHING TO HIDE.

*No visible fasteners or screws. Just the cleanest, simplest shading technology in the world.*

Learn more at JGeigerShading.com
646. 588. 0895
Info@jgeiger.com

150 E. 58th St. Floor 3, NY, NY 10155

**2015 - Architect & Design Building Directory Page**





## NOTHING TO HIDE.

*"Sometimes the most refined aesthetic is the most subtle."*

James Geiger

The first completely custom, fascia-free motorized shades.
Ask about our hidden pocket ceiling installation.

Learn more at **JGeigerShading.com/rr**

New York | Los Angeles | Charleston | Miami

J | GEIGER

**2015 - Robert Report - Print Ad and Directory listing**





## NOTHING TO HIDE.

*"In my experience, the most advanced design is often the most simple."*

James Geiger

The first completely custom, fascia-free motorized shades. Ask about our invisible pocket ceiling installation.

Learn more at **JGeigerShading.com/luxe**
1-844-543-4437

New York | Los Angeles | Charleston | Miami

J | GEIGER

## 2015 - LUXE - Nov/Dec Print Ad







## NOTHING TO HIDE.

*"In my experience, the most advanced design is often the most simple."* James Geiger

The first completely custom, fascia-free motorized shades.
Ask about our invisible ceiling pocket installation.

Pacific Design Center │ Suite B-112 │ 844-543-4437

JGeigerShading.com/PDC

**2016 - Pacific Design Center Directory Ad**



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI | SAN FRANCISCO | DALLAS | SEATTLE | CHICAGO
JGeigerShading.com/ml • 1-844-543-4437

**2016 - Modern Luxury - January Ad**

# J | GEIGER
### SHADING TECHNOLOGY



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI

JGeigerShading.com/id • 1-844-543-4437

## 2016 - Interior Design - January Print Ad





## NOTHING TO HIDE.

*"In my experience, the most advanced design is often the most simple."*
James Geiger

The first completely custom, fascia-free motorized shades.
Ask about our invisible pocket ceiling installation.

Learn more at JGeigerShading.com/dwell
1-844-543-4437

New York | Los Angeles | Charleston | Miami



J | GEIGER

## 2016 - Dwell - February Print Ad

Discover JGeiger Shading & modern shading solutions





## YOUR MODERN LUXURY SHADING SOLUTION IS FINALLY HERE.

JGeiger Shading works with architects, builders, developers and designers to provide seamless window solutions to the most exclusive spaces – and we're ready to help you complete your next project. Contact us today to learn more about our patented and flagship, R-Series Shading System, and about a variety of fabrics and custom installations.

**LEARN MORE**



844-543-4437
jgeigershading.com

Look for JGeiger Shading Technology in Miami.





## HELLO,
## SOUTH FLORIDA

*JGeiger Shading Technology is pleased to announce expansion into the Miami area! To learn more about our completely custom, clean, modern and motorized shading systems, call 844-543-4437. And don't forget to ask about our latest invisible ceiling pockets.*

**SCHEDULE AN APPOINTMENT**



**2016 - Dwell - Dwell Digital email marketing - Miami Market**

# J | GEIGER
SHADING TECHNOLOGY



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI
JGeigerShading.com/elle • 1-844-543-4437

## 2016 - ELLE Decor - March Print Ad

# J | GEIGER
## SHADING TECHNOLOGY



**PRETTY. SIMPLE.**



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI | SAN FRANCISCO | DALLAS | SEATTLE | CHICAGO

JGeigerShading.com/ad • 1-844-543-4437

## 2016 - Architectural Digest - March Print Ad



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI
JGeigerShading.com/rr • 1-844-543-4437

## 2016 - Robert Report - March Print Ad



**2016 - Robert Report - Website Ad**

# J | GEIGER
### SHADING TECHNOLOGY



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI
JGeigerShading.com/id • 1-844-543-4437

## 2016 - Interior Design - March Print Ad



PRETTY. SIMPLE.



NEW YORK | LOS ANGELES | CHARLESTON | MIAMI

JGeigerShading.com/dwell • 1-844-543-4437

## 2016 - Dwell - May Print Ad



Aspen

Charleston

Los Angeles

Miami

New York

San Francisco

Seattle

1-844-543-4437

jgeigershading.com/dwell

**2017 - Dwell - May/June Print Ad**

Aspen   |   Charleston   |   Los Angeles   |   Miami   |   New York   |   San Francisco   |   Seattle





## SIMPLY MODERN.

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, modern design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

info@j-geiger.com   |   1-844-543-4437   |   jgeigershading.com

## 2017 - Dwell - Sept/Oct & Nov/Dec Print Ad



ASPEN

CHARLESTON

LOS ANGELES

MIAMI

NEW YORK

SAN FRANCISCO

SEATTLE

1-844-543-4437

jgeigershading.com

2017 - Architectural Digest - May, June, and July Print Ad



**2017 - Atomic Ranch - January, April, August, and October Print Ad**



Aspen

Charleston

Los Angeles

Miami

New York

San Francisco

Seattle

1-844-543-4437

jgeigershading.com

**2017 - Garden and Gun - Print Ad**



STYLISH SHADES

**COMPANY**
J Geiger Shading Technology

**PROJECT LOCATION**
Kiawah Island

**WEBSITE**
jgeigershading.com

**PHONE NUMBER**
(843) 577-3855

**SPECIALTIES**
Custom Luxury Motorized &
Manual Shades

# BLENDING BEAUTIFULLY

## R-SERIES MOTORIZED SHADING SYSTEM

This Kiawah Island home contains prime examples of the R-Series motorized shading system. The customizable product met the needs of this family perfectly. In order to enjoy the sunlight without having to worry about glare or UV rays damaging their home's interior, they chose a sheer fabric that is protective while not obstructive. The beautiful hardware allows for a fascia free design, while still hiding wires, screws and blends in with the modern beach house aesthetic seamlessly. No bulky shade boxes or long cords disrupt the lovely views. As with other products from J Geiger, this particular style can be operated both manually or electronically. Family members can adjust the motorized shades with their smart-phone, a hand-held remote, or even a wall-mounted keypad.

112   CH+D · *Spring 2017*

**2017 - Charleston Home & Design - native ad**



2017 - Florida Design - Print Ad



Aspen | Charleston | Los Angeles | Miami | New York | San Francisco | Seattle

# J | GEIGER

### SHADING TECHNOLOGY

## SIMPLY MODERN.

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, minimalist design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

### NOW IN SEATTLE!

bfeder@j-geiger.com   |   425.891.8598   |   jgeigershading.com

## 2017 - Home and Golf Magazine - Print Ad





## SIMPLY MODERN.

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, minimalist design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

### NOW SERVING THE HAMPTONS!

info@j-geiger.com   |   1-844-543-4437   |   jgeigershading.com

**2017 - Hamptons Beach Magazine - August Print Ad**



Aspen | Charleston | Los Angeles | Miami | New York | San Francisco | Seattle

# J | GEIGER

SHADING TECHNOLOGY

## SIMPLY MODERN.

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, modern design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

info@j-geiger.com | 979-541-7052 | jgeigershading.com

**2017 - Aspen Peak Print Ad**



# J | GEIGER
### SHADING TECHNOLOGY

## SIMPLY MODERN

Nothing to hide. No visible fasteners or screws. No fascia.  Just
sleek, minimalist motorized & battery powered window shades.

A&D Building | 150 East 58th St. 3rd Floor | New York, NY 10155 | 646.927.0288 | jgeigershading.com

## 2018 - A&D Building - Architect Newspaper Print Ad



# J | GEIGER
### SHADING TECHNOLOGY



## SIMPLY MODERN

Nothing to see here but the view. We trade unsightly screws and wires for a sleek,
modern design, offering a full line of luxury motorized and battery powered shades,
so you can get straight to the view without distraction.

A&D Building
150 East 58th St. 3rd Floor New York, NY 10155
1.646.927.0288   |   jgeigershading.com

Alex Lucaci Photography and James Rixner Interiors

# 2018 - A&D Building - A&D Directory Print Ad



## 2018 - Aspen Newspaper
## February Ad



2018 - Aspen Newspaper
March Ad



2018 - Dwell - Digital Ad 1



**2018 - Dwell - Digital Ad 2**



Dwell - Digital Ad 3



Nothing to see here but the view. We trade unsightly screws and wires for a sleek, modern design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

info@J-Geiger.com   |   1-844-543-4437   |   JGeigerShading.com

also available nationally through    J Geiger Design. Savant Control.

**2018 - Dwell - March Print Ad Featuring Savant**



# J | GEIGER

### SHADING TECHNOLOGY



## SIMPLY MODERN

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, modern design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

Call for a free in-home estimate!
Servicing the Greater Seattle Area

425.891.8598 | www.Jgeigershading.com | bfeder@J-geiger.com

**2018 - Gray Magazine - February Print Ad**



# J | GEIGER
### SHADING TECHNOLOGY



## SIMPLY MODERN.

Nothing to see here but the view. We trade unsightly screws and wires for a sleek, minimalist design, offering a full line of luxury motorized and battery powered shades, so you can get straight to the view without distraction.

at JANGEORGe Interior Design, 17 Madison St, Sag Harbor, NY

Info@J-Geiger.com | 1.646.927.1288 | JGeigershading.com

## 2018 - Hamptons Magazine - March Print Ad



Our sleek and modern design eliminates unsightly screws, fascia and exposed wires.  A full line of luxury wired and battery powered shades are available and can integrate with all major home systems.  Designs range from our exposed aluminum R Series brackets to our seamlessly hidden P Series pocket system.

info@j-geiger.com   |   www.jgeigershading.com   |   816-456-6634

**2018 - Miami Modern Luxury - 2018 Spring Print Ad**

# EXHIBIT 4



DESIGN NEWS

# These Modern Shades Are Revolutionizing the Market

By Sarah Akkoush — February 1, 2018

Presented by J Geiger



View Photos

**The first to develop aesthetically pleasing motorized shading technology, J Geiger offers a modern alternative to dated, visually distracting window coverings.**

When James Geiger was leafing through the pages of Dwell in 2012, he made one interesting and illuminating observation. None of the stunning images he saw of beautiful modern homes included window shades or blinds. Seemingly a functional necessity, window coverings were conspicuously absent in every image. Wondering why this might be the case, Geiger realized it was undoubtedly because modern, minimal shades simply didn't exist in the marketplace. Banking on this guess, he took a chance on promoting his budding motorized shading company, J Geiger, in the pages of Dwell. He took out one ad, and immediately got four hundred inquiries from new interested customers, who turned

Our site uses cookies. By continuing to use our website, you agree to our **privacy policy**.          Accept

out to be mostly architects. The overwhelming response affirmed the void in the market, and drove Geiger to offer a product that would solve a problem and answer an unmet need.



Categories: *bedroom, lamps, bed, light hardwood floors, ceiling lighting, rug floors, recessed lighting, chair*



Categories: *bath room, freestanding tubs, drop in sinks, granite counters*

With beginnings in Charleston, South Carolina, James Geiger, the company's founder and president, got his start developing and installing audio/video systems in high-end residences. Seeing a hole in the market, Geiger pivoted to start developing innovative shading solutions in 2011, and those original clients became clients of his new business. "Necessity drives innovation," says Geiger. With the idea that the shade would be round, Geiger used a lathe to make his first prototype. From that initial design, J Geiger was born – creating a product that simply didn't exist before. Traditional shading products "had

Our site uses cookies. By continuing to use our website, you agree to our privacy policy.     Accept

function, but no aesthetic," says Geiger. Conversely, he wanted to create something with a 'less is more' approach that would be clean, minimal, and "become part of the architecture."



*Categories: staircase, wood tread*



Simple and elegant, J Geiger was the first to offer modern, motorized shading solutions. The innate composition of the shades, along with their exacting installation, all make J Geiger designs unparalleled among 'next-best' options. Aesthetic differentiators of the J Geiger brand include a fascia-free design that rejects ceilings pockets, wires, and screws – often eyesores in the context of an otherwise minimal, modern design. Instead, the shades have a compact profile, secured with small aluminum brackets from fabricators in

California. The compact motor controls the shades wirelessly, making home automation streamlined and simple. Homeowners can control their shades with a customized J Geiger app or their own home control system of choice, a strategic redundancy that offers added security and peace of mind in the event of unexpected malfunction or outage.





J Geiger's exacting and precise installation methods also set them apart in terms of finished appearance. The alignment of the shade with the glass is critical in each individualized application. "When there is a vertical divide in the glass, [we realized] the shade should be divided at that place," explains Geiger. In addition, their two-step installation strategy removes all chance for error. First, they install the metal, then they install the fabric later to fit the metal. This approach ensures accuracy of fit, and a clean and symmetric finished appearance.

Our site uses cookies. By continuing to use our website, you agree to our **privacy policy**. Accept



Continuing to innovate, J Geiger offers countless shading options – both aesthetically and functionally. All of the textiles for the shades are made in Charleston, and numerous color, fabric, opacity options are offered. Custom shapes can be designed to fit specialty or angled windows, with both bottom-down and top-up functionality. Their 'P Series' offers a pocket system that completely conceals the shade, getting rid of the visual transition between shade and wall. The quiet, compact motors are controlled wirelessly using a remote, tablet, or smartphone. A unique J Geiger feature is that a single motor is able to control a group of shades, not just one. A new offering, battery-controlled shades, provide a completely wire-free alternative that is efficient and long-lasting. Geiger believes all motorized shades will trend towards battery power in the future.



Through their pioneering design, and penchant for precision, J Geiger has been able to provide a unique, stylized shading system that is tailor-made to modern living. Emphasizing a minimal and understated aesthetic, J Geiger offers innovative and elegant shades that complement, not compete with, the surrounding architecture.

Latest Stories

### 6 Popular Houseplants to Avoid When You Live With Pets



### An 18th-Century Townhouse Is Now a Chic Norwegian Rental



PROMOTED

### These Modern Shades Are Revolutionizing the Market



### A Tetrahedron Cabin With Stellar Seaside Views Is Listed For $695K



### A Washington Artist Retreat Boasts Mesmerizing Mountain Views



### 35 Swoon-Worthy Staircases That Are a Step Above the Rest



SEE MORE STORIES »

Our site uses cookies. By continuing to use our website, you agree to our **privacy policy**.     Accept

ABOUT

About Dwell
Advertise on Dwell
Contact Dwell
Explore Dwell
Privacy & Terms
Community Guidelines
Media Kit

DWELL MAGAZINE

Subscribe to Dwell
Gift Subscriptions
Order Back Issues
Subscription Help

PROFESSIONALS

Showcase Your Work
Promote Your Work
Become a Dwell Pro

MERCHANTS

Sell Products on Dwell
Advertise Products
Shop on Dwell

© 2018 Dwell Life, Inc. All rights reserved.

Our site uses cookies. By continuing to use our website, you agree to our privacy policy.     Accept

# EXHIBIT

| United States Patent 10,415,307 (the "'307 Patent") | Lutron Exemplary Component(s) | |
|---|---|---|
| **1**. A roller shade mounting element, comprising: | Lutron End Bracket Assembly | Lutron Center Bracket Assembly |
| | Lutron Document (attached) "Exposed Motorized Shade 085560f 1 08.13.19" states: "Lutron Palladiom Motorized **Roller Shades** are ideal for exposed applications … these shades are mounted on solid aluminum **brackets** that completely conceal wiring and offer a refined aesthetic…." (Emphasis Added). | |
| | | |
| a mount portion configured to couple to a support surface; | The highlighted portion of the brackets are the mount portion that are coupled to the support surface.  Further, the Lutron Document "Exposed Motorized Shade 085560f 1 08.13.19" states: "Palladiom shades must be mounted to blocking or other suitable structural material" (i.e. support surface). | |
| | | |



| | | |
|---|---|---|
| a bracket portion configured to support a roller window shade assembly, the bracket portion comprising: | | |
| a first end and a second end substantially opposite the first end; | | |
| a first surface at the first end configured to bear against the support surface; | | |



a second surface between the first end and the second end, the second surface configured to extend adjacent an end of the roller window shade assembly; and

| | |
|---|---|
| a member coupled with the bracket portion, the member extending outward from the second surface, the member configured to engage the roller window shade assembly, and the member configured to limit rotation of at least a portion of the roller window shade assembly; |   |
| wherein the combination of the bracket portion and the roller window shade assembly completely obscures at least a portion of the mount portion to an observer. | The following images are taken from the Lurton "Palladiom Shading System – Engineered to be beautiful." Brochure indentified on the last page as "P/N 367-2741 REV A" and dated October 2017.   |